## BRUCE et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. December 28, 1912.)

No. 3,805.

1. CRIMINAL LAW (§ 304*)—EVIDENCE—JUDICIAL NOTICE—STATUTES—POSTAL REGULATION.

Federal courts will take judicial notice of the statutes conferring on the Postmaster General authority to promulgate regulations, and of the regulations adopted and promulgated pursuant thereto.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 295½, 700–717; Dec. Dig. § 304.*]

2. POST OFFICE (§ 14*)—REGULATIONS—POSTMASTER GENERAL—AUTHORITY—MAILABLE MATTER—MEDICINES CONTAINING POISONS.

Cr. Code, § 217 (Act March 4, 1909, c. 321, 35 Stat. 1131 [U. S. Comp. St. Supp. 1911, p. 1654]), provides that all poisons and compositions containing poison are nonmailable, but that the Postmaster General may permit mailing under such rules and regulations as he may prescribe "as to preparation and packing" of any articles previously declared nonmailable, which are not outwardly or of their own force dangerous or injurious to life, health, or property. *Held,* that the authority of the Postmaster General to prescribe regulations for the mailing of poisons or compositions containing poison not outwardly or of their own force

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dangerous or injurious to life, health, or property was limited to regulations as to the "preparation and packing" thereof, so that Post Office Department Order No. 2,923, promulgated February 23, 1910, prohibiting the mailing of medicines containing poison except for transmission in the domestic mails from the manufacturer or dealer to licensed physicians, surgeons, pharmacists, and dentists when inclosed in packages conforming to conditions prescribed, was outside the jurisdiction of the Postmaster General, and invalid.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 21; Dec. Dig. § 14.*]

3. POST OFFICE (§ 48*)—POSTAL REGULATION—VIOLATION—STATUTES.

Where an indictment charged a violation of the postal regulations in the transmission of a composition containing poison, but was insufficient because the regulation was beyond the jurisdiction of the Postmaster General, the indictment could not be sustained as charging a violation of Cr. Code, § 217 (Act March 4, 1909, c. 321, 35 Stat. 1131 [U. S. Comp. St. Supp. 1911, p. 1654]), prohibiting the transmission of poisons or compositions containing poison except in accordance with regulations prescribed by the Postmaster General.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.*]

4. POST OFFICE (§ 50*)—MISUSE OF MAILS—SCHEME TO DEFRAUD.

Where, in a prosecution for misuse of the mails in furtherance of a scheme to defraud in mailing matter intended to advertise the sale of a compound containing morphine for the cure of the morphine habit, there was evidence that morphinism might be treated by gradually reducing the quantity of morphine taken by the patient until no morphine was required, but that one addicted to the use of morphine would not be expected to cure himself because he had not sufficient will power to gradually reduce the amount taken, and that the substance in the hands of an unrestrained habitué, unassisted by a physician, would not tend to cure and could not possibly cure the habit, it was error to refuse to charge that the fraud was not in the fact that morphine was employed in the treatment of the habit, but in the fact that the substance was falsely represented to be curative in itself.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. § 50.*]

5. POST OFFICE (§ 50*)—MISUSE OF MAILS—SCHEME TO DEFRAUD—INSTRUCTIONS.

It was also error to refuse to charge that the fact that the substance was labeled "Poison" in unmistakable characters, and gave public notice of the fact that the substance contained morphine, was evidence to be considered in behalf of the defendants on the question as to their purpose in selling it to habitual consumers of morphine, that the purchasers were not deceived with reference to the fact that the substance contained morphine, and that defendants' conviction should not depend on the opinion of medical men that the substance was not curative of the habit, but that, if the jury found that whether the substance was remedial in character when exhibited as part of the treatment of morphinism was merely a matter of opinion among medical men, defendants must be acquitted.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. § 50.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ryland C. Bruce and R. C. Prewitt were convicted of mailing non-mailable matter, and they bring error. Reversed, and new trial ordered.

Chester H. Krum and P. H. Cullen, both of St. Louis, Mo. (Barclay, Fauntleroy & Cullen, of St. Louis, Mo., on the brief), for plaintiffs in error.

Homer Hall, Asst. U. S. Atty., of Trenton, Mo. (Charles A. Houts, U. S. Atty., and Charles H. Daues, Asst. U. S. Atty., both of St. Louis, Mo., on the brief).

Before SANBORN and CARLAND, Circuit Judges, and W. H. MUNGER, District Judge.

CARLAND, Circuit Judge. Plaintiffs in error were tried, convicted, and sentenced upon an indictment, the first count of which reads as follows:

"The grand jurors of the United States, impaneled, sworn, and charged at the term aforesaid of the court aforesaid, on their oath present: That Ryland C. Bruce and R. C. Prewitt, whose Christian name is to the grand jurors aforesaid unknown, heretofore, to wit, on or about the 12th day of June, 1911, within the division and district aforesaid, and within the jurisdiction of the court aforesaid, under the name of the Delta Chemical Company, did then and there unlawfully, knowingly, and feloniously deposit, and cause to be deposited, for mailing and delivery, in the mails of the United States, to wit, in the post office of the United States at St. Louis, in the state of Missouri, certain nonmailable matter, to wit, an article and composition containing poison—that it so say, containing large quantities of a drug known as morphine—which poisonous compound is known as 'Habitina,' which said article and composition so containing said morphine was contained in a package then and there addressed to H. W. Duckworth, Bloomfield, Iowa, and which said package was postmarked St. Louis, Mo., bearing return card as follows, to wit: 'Suite 1105-8 Holland Bldg., St. Louis, Mo., U. S. A.'—and which said matter then and there mailed as aforesaid was not then and there addressed to and intended for a licensed physician, surgeon, pharmacist, or dentist, as prescribed and permitted under the rules and regulations promulgated by authority of law by the Postmaster General of the United States, all of which they, the said Ryland C. Bruce and R. C. Prewitt, whose Christian name is to the grand jurors aforesaid unknown, then and there well knew: Contrary to the form of the rules and regulations prescribed by the Postmaster General of the United States, and contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The second count, in substance, charged Ryland C. Bruce and R. C. Prewitt with having unlawfully, knowingly, and feloniously devised a scheme and artifice to defraud for the purpose of obtaining from divers persons money and property by false and fraudulent representations and pretenses sent through the post office establishment of the United States. The scheme as set forth in the indictment was that the above-named persons, in the name of the Delta Chemical Company, would, by advertisements, pamphlets, and letters sent through the mails of the United States, claim to have a drug and preparation called, "Habitina" which would effect a cure of the morphine habit; that by taking said medicine as directed, and without further assistance, such person would become free of the habit of using morphine, whereas, in truth, said "Habitina" was in fact and almost entirely the drug called morphine and that the use of said drug would not cure

said drug habit, and contained no curative properties for said habit; that in furtherance of said scheme and artifice to defraud, and as a part thereof, said Ryland C. Bruce and R. C. Prewitt, under the name above mentioned, unlawfully, willfully, knowingly, and feloniously on or about the 8th day of January, 1910, did deposit and cause to be deposited in the mails of the United States, to wit, in the post office of the United States at St. Louis, in the state of Missouri, for mailing and delivery, a certain letter and envelope, which letter is set forth in the indictment.

The indictment contained a third count, but, as there was no evidence offered in support of it, it may be dismissed from consideration.

Counts 1 and 2 of the indictment are attacked in the briefs of counsel for plaintiffs in error as insufficient in respect to some of the allegations therein, but, as no objection was made to the indictment in the trial court, no assignments of error are before us which would allow us to consider the sufficiency of the indictment as a pleading. The first count of the indictment, however, as appears from its language, charges a violation simply of a regulation of the Postmaster General. It was claimed in the trial court that the regulation upon which the first count of the indictment is based was promulgated without authority of law, and the point is again urged in this court.

[1] A certified copy of the regulation in question was offered at the trial, and its admission as evidence was objected to by counsel for plaintiffs in error, for the reason that it was unauthorized. It is true that the court would have had the right to take judicial notice of the regulation when called to its attention, without its being offered in evidence. Caha y. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415. We simply state the fact of its offer to show that the point regarding the validity of the regulation was properly saved. Indeed, as we must take judicial notice of the laws of Congress which would confer upon the Postmaster General the authority to promulgate the regulation, the point would be open at any time upon the record without a bill of exceptions, as the indictment would not support the judgment rendered on the first count if the regulation claimed to have been violated was unauthorized. We therefore proceed to discuss the validity of this regulation.

[2] The authority of the Postmaster General to make the regulation, if it exists at all, must be found in the following part of section 217 of "An act to codify, revise and amend the penal laws of the United States" (35 Stat. 1131):

"All kinds of poison, and all articles and compositions containing poison, and all poisonous animals, insects, and reptiles, and explosives of all kinds, and inflammable materials, and infernal machines, and mechanical, chemical, or other devices or compositions which may ignite or explode, and all disease germs or scabs, and all other natural or artificial articles, compositions, or materials of whatever kind which may kill, or in any wise hurt, harm, or injure another, or damage, deface, or otherwise injure the mails or other property, whether sealed as first-class matter or not, are hereby declared to be nonmailable matter, and shall not be conveyed in the mails or delivered from any post office or station thereof, nor by any letter carrier; but the Postmaster General may permit the transmission in the mails, under such rules and regulations as he shall prescribe as to preparation and packing, of any articles

hereinbefore described which are not outwardly or of their own force dangerous or injurious to life, health, or property. * * * Whoever shall knowingly deposit or cause to be deposited for mailing or delivery, or shall knowingly cause to be delivered by mail according to the direction thereon, or at any place at which it is directed to be delivered by the person to whom it is addressed, anything declared by this section to be nonmailable, unless in accordance with the rules and regulations hereby authorized to be prescribed by the Postmaster General, shall be fined not more than one thousand dollars, or imprisoned not more than two years, or both."

Taking the language of said section, so far as it is material to the point now under consideration, it would read as follows:

"All kinds of poison, and all articles and compositions containing poison * * * are hereby declared to be nonmailable matter, and shall not be conveyed in the mails or delivered from any post office or station thereof, nor by any letter carrier; but the Postmaster General may permit the transmission in the mails, under such rules and regulations as he shall prescribe as to *preparation and packing*, of any articles hereinbefore described which are not outwardly or of their own force dangerous or injurious to life, health, or property."

Under the above statute the Postmaster General on February 23, 1910, by order No. 2,923, established, among others, the following regulation:

"Medicines composed in part or wholly of poison or poisons, and anesthetic agents, which are not outwardly or of their own force dangerous or injurious to life, health, or property, and not in themselves unmailable, may be admitted to the mails for transmission in the domestic mails from the manufacturer thereof or dealer therein to *licensed physicians, surgeons, pharmacists, and dentists, and not otherwise*, when inclosed in packages in conformity with the conditions prescribed in section 496: Provided, that the package bears the label or superscription of the manufacturer of or dealer in the article mailed."

Section 496, referred to in the above regulation, provided how such articles should be prepared and packed for mailing. In a few words it may be said that Congress, by section 217 of the Criminal Code above quoted, declared all kinds of poisons and articles and compositions containing poison nonmailable, with authority, however, to the Postmaster General to permit such poisons and articles and compositions containing poison, which were not outwardly or of their own force dangerous or injurious to life, health, or property, to be transmitted in the mails when prepared and packed in accordance with such rules and regulations as he should prescribe. "Habitina" contained poison, but was not an article outwardly or of its own force dangerous or injurious to life, health, or property; hence, the Postmaster General could permit its transmission through the mails when prepared and packed for mailing as he should prescribe. In the regulation, however, which plaintiffs in error are charged with violating, the Postmaster General restricted the right to transmit poisons or articles and compositions containing poison to cases where the manufacturer thereof or dealer therein should transmit such articles to licensed physicians, surgeons, pharmacists, and dentists, and not otherwise. The power conferred by section 217 of the Criminal Code, upon the Postmaster General, was to make rules and regulations as to preparation and packing, and it was the depositing for mailing and delivery in the United States post office of the above-named articles, in violation of

the rules and regulations which the Postmaster General should prescribe as to preparation and packing which Congress intended to punish when it provided the penalty for a violation of said section, the language used being:

"Unless in accordance with the rules and regulations hereby authorized to be prescribed by the Postmaster General shall be fined, etc."

The Postmaster General was not authorized to permit the transmission through the mails of poisons and articles and compositions containing poison not outwardly or of their own force dangerous or injurious to life, health, or property under such rules and regulations as he should prescribe, but the power to prescribe rules and regulations was restricted to the preparation and packing of such articles. Therefore the general power to permit the transmission through the mails of poisons and articles and compositions containing poison, under such rules and regulations as to preparation and packing, did not carry with it the power to prescribe that such articles could only be mailed by the manufacturer thereof or dealer therein to licensed physicians, surgeons, pharmacists, and dentists. We are not called upon to decide as to the constitutionality of that part of section 217 of the Criminal Code which authorizes the Postmaster General to permit the transmission through the mails of poisons and articles and compositions containing poison not outwardly or of their own force dangerous or injurious to life, health, or property as being a delegation of legislative power, for, conceding the provision to be valid, it limits the power to make rules and regulations to the matter of preparation and packing, and no rule or regulation of such a character is alleged to have been violated.

[3] It is alleged, however, in support of the first count of the indictment, conceding the regulation charged to have been violated to have been unauthorized, that the count is sufficient to sustain a conviction under the statute itself, in that it charges the depositing for mailing and delivery in the mails of the United States of nonmailable matter, to wit, "Habitina," containing morphine, a poisonous article. This would require us to reject as meaningless all the language of the indictment in reference to a violation of the regulation, which we certainly would not be authorized to do after the jury has returned a verdict of guilty of the crime charged in the first count. We take judicial knowledge of the statute itself, and from that we learn that the Postmaster General may permit such an article as "Habitina" to be transmitted through the mails under such rules and regulations as he may prescribe as to preparation and packing. Therefore, when the pleader pleaded a violation of a regulation of the Postmaster General, we must presume that permission had been granted by him to transmit through the mails the article in question, and that a violation of the regulation was all that was intended to be charged. Plaintiffs in error were entitled to presume the same thing.

The regulation which plaintiffs in error were charged with violating exceeded the power conferred by the statute upon the Postmaster General, and therefore is void. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267; Teall v. Felton, 1 N. Y. 537, 49 Am. Dec. 352;

Noble v. Logging Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123; United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591; Teal v. Felton, 12 How. 284, 13 L. Ed. 990.

In so deciding we are not unmindful that Congress may, after it has legislated and indicated its will, give those administrative officers who are to act under such laws power to fill up the details by the establishment of administrative rules and regulations, the violation of which can be punished by fine and imprisonment fixed by Congress. United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563. But the facts in this record present no such case.

[4, 5] In support of the second count of the indictment, bottles containing "Habitina" were introduced in evidence, the larger size bearing the following label:

## HABITINA

**PRICE TWO .DOLLARS**

**POISON**

CONTAINS 1% ALCOHOL.
ONE FLUID OUNCE CONTAINS:
16 GRAINS MORPHINE SULPHATE
8 GRAINS DIACYTLE MORPHINE HYDROCHLORIDE
(MORPHINE DERIVATIVE)
with other ingredients.
Ten (10) Minims of this Solution contains:
Morphine Sulphate ⅛ grain.  Diacetyl Morphine Hydrochloride 1-6 grain,
(MORPHINE DERIVATIVE)
with other ingredients.
For Hypodermic or Internal Use.  When used internally it can be diluted with water.
DISTRIBUTED BY
DELTA CHEMICAL CO.,          St. Louis, Mo., U. S. A.
Guaranteed under the Food and Drugs Act, June 30, 1906.  Serial No. 2536.

It was prescribed in printed pamphlets that those who were to use "Habitina" should begin active treatment by taking it 4 to 8 times per day for the first 24 hours in sufficient quantity to keep patient perfectly comfortable. After the patient should find the amount necessary to sustain him, he should continue this dosage for 6 days, at which time a small reduction should be made, and thereafter a small reduction should be made every 4 or 5 days, decreasing the amount taken until the patient should be off the preparation entirely. There was evidence given by medical men that morphinism may be treated by gradually reducing the quantity of morphine taken by the patient; that morphine may be employed to cure a victim of morphinism—that is to say, where a person addicted to the use of the drug morphine can be controlled by nurse or physician as to the amount of morphine which he should take, morphine may be administered in gradually decreasing doses until no morphine is required, the patient, as the morphine is reduced in quantity, being given other medicine to sustain the nervous system until the desire for morphine is gone. The evidence was to the effect, however, that it is not expected that one addicted to the use of morphine can cure himself, for the reason that he has not sufficient will power to gradually reduce the amount of morphine taken. Instances have occurred, however, where persons have cured themselves of the habit. Several medical men testified on the part of the

prosecution that "Habitina" in the hands of an habitué unrestrained and unassisted by a physician would not tend to cure, and could not possibly cure the habit of taking morphine. In view of the above evidence, counsel for plaintiffs in error requested the trial court to charge the jury as follows:

"(1) It is a fact, as shown by the evidence, that morphinism, whether a disease or a condition of chronic poisoning, may be treated by gradually reducing the quantity of morphine taken by the patient. In other words, morphine may be employed to cure the victim of morphinism. Therefore, there is and can be nothing fraudulent merely in the employment of morphine as a part of the treatment of morphinism. The fraud here charged is that the preparation called 'Habitina' was falsely represented to be in itself curative of the habit without reference to its being part of a treatment in which other agencies might be employed or in which additional steps might be taken for the betterment of the patient.

"(2) The court charges the jury that the fact that the bottles containing 'Habitina' were labeled 'Poison' in unmistakable characters, and gave public notice of the fact that the contents contained morphine, is evidence properly to be considered in behalf of the defendants upon the question as to their purpose in selling it to habitual consumers of morphine. Not only is this the fact, but the fraud which the statute seeks to punish is one which arises out of pretenses calculated to deceive, and where an habitual user of morphine is notified that a preparation furnished him for his treatment in the cure of the habit contains morphine, it cannot be said that to sell him such a preparation with notice that it contained morphine kept him in the dark as to the fact that such was at least one of its component parts.

"(3) The court charges the jury that whether the defendants are to be convicted upon the second count does not depend upon the opinion of medical men that 'Habitina' is not curative of morphinism; on the contrary, if the jury find from the evidence that whether 'Habitina' is remedial in character when exhibited as part of the treatment of morphinism is merely a matter of opinion among medical men, the defendants must be acquitted. No conviction of fraudulent purpose can lawfully be based upon matters merely of opinion."

In regard to fraudulent purposes being based upon matters of opinion, the case of the American School v. McAnnulty, 187 U. S. 104, 23 Sup. Ct. 33, 47 L. Ed. 90, is in point. We think the above requests to charge were pertinent to the evidence as it stood before the jury, and that plaintiffs in error were entitled to have the same given. It does not appear that similar instructions were given by the court in any part of its charge delivered on its own motion.

For the error in holding that the regulation referred to in count 1 was valid, and the error in refusing to charge as requested upon the second count of the indictment, the judgment below must be reversed and a new trial granted. And it is so ordered.