### KERR v. UNITED STATES.[*]

(Circuit Court of Appeals, Ninth Circuit. February 23, 1926.)

No. 4683.

**I. Post office ⊚⟀48(I)—Indictment for mailing poison with intent to kill or injure another held sufficient (Penal Code, § 217 [Comp. St. § 10387]).**

Indictment charging that defendant, feloniously and with intent to kill or injure L. F. K., deposited in United States mail for delivery a quantity of poison contained in pieces of candy in a box addressed to L. F. K., and that defendant caused to be delivered to L. F. K. by the Post Office Department, a quantity of poison contained in pieces of candy addressed in same manner, *held* to charge violation of Penal Code, § 217 (Comp. St. § 10387); allegations that offenses charged were violations of postal regulations (section 460) being surplusage.

**2. Witnesses ⊚⟀61(I)—Permitting wife to testify against husband charged with mailing her poisoned candy held not error (Penal Code, § 217 [Comp. St. § 10387]).**

In prosecution for mailing box of candy containing poison to defendant's wife in violation of Penal Code, § 217 (Comp. St. § 10387), it was not error to permit wife to testify against defendant, in view of common-law rule permitting such testimony in case of personal violence by husband against wife.

**3. Post office ⊚⟀49—In prosecution for mailing poisoned candy, testimony as to typewriter used in addressing package held admissible (Penal Code, § 217 [Comp. St. § 10387]).**

In prosecution for mailing box of poisoned candy in violation of Penal Code, § 217 (Comp. St. § 10387), admission of evidence concerning typewriter owned by defendant's brother-in-law, which expert testified was used in addressing the package mailed, *held* not error.

**4. Criminal law ⊚⟀673(2)—In prosecution for mailing poisoned candy, evidence of disposition of typewriter by other than defendant held admissible on instructing as to effect.**

In prosecution for mailing poisoned candy, where expert testified that typewriter, owned by defendant's brother-in-law, had been used in addressing package, it was not error to admit evidence that, after news of offense was published, defendant's brother-in-law placed typewriter in bank vault and bought another; use thereof being limited by instructions.

**5. Post office ⊚⟀49.**

Evidence *held* to sustain conviction under Pen. Code, § 217 (Comp. St. § 10387), for mailing poisoned candy with intent to kill or injure another.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

Franklin E. Kerr was convicted of violating postal laws, and he brings error. Affirmed.

Cooper, Collings & Shreve and Hugh L. Dickson, all of Los Angeles, Cal., for plaintiff in error.

Samuel W. McNabb, U. S. Atty., and J. George Ohannesian, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Defendant below was convicted under two counts of an indictment charging violation of the postal laws of the United States (section 217, Penal Code [Comp. St. § 10387]).

[1] The first count charged that Kerr feloniously, and with intent to kill or injure Luella F. Kerr, did deposit or cause to be deposited in the United States mail for mailing and delivery by the Post Office Department, a quantity of poison commonly known as sodium cyanide, which was then and there contained in pieces of chocolate candy, the candy and sodium cyanide being in a box, addressed on the outside as follows: "From Mable and Blythe, 2037 Fig. St. Los Angeles. Luela F. Kerr, M. D. Fillmore, Calif.," contrary to the form of the statute and in violation of the postal laws and regulations. The second count charged that defendant caused to be delivered to Luella F. Kerr by the Post Office Department at Fillmore, Cal., a quantity of poison commonly known as sodium cyanide contained in pieces of chocolate candy, addressed as described in the first count.

The sufficiency of the indictment is questioned, but we believe it is valid under section 217 of the Penal Code, which makes it an offense for any one to deposit knowingly or cause to be deposited for mailing or delivery, or knowingly causes to be delivered by mail according to the direction thereon, anything declared by the section to be nonmailable, whether transmitted in accordance with the rules and regulations prescribed by

*Rehearing denied April 19, 1926. Certiorari denied 46 S. Ct. 639, 70 L. Ed. —.

the Postmaster General or not, with design or intent or purpose to kill or injure another. The things declared to be nonmailable are all kinds of poison and articles or compositions containing poisons which may kill or in any wise injure a person. Bruce v. United States, 202 F. 98, 120 C. C. A. 370, cited by plaintiff in error, is not in point. There defendant was charged with sending an article containing poison through the mails, the package not being addressed to or intended for a licensed physician or druggist, as prescribed and permitted by the rules promulgated by the Postmaster General. The Court of Appeals for the Eighth Circuit held that the indictment could not be sustained, because the regulation allowing such a package to be mailed to a licensed physician was beyond the power of the Postmaster General. The allegations of the indictment here involved, that the offenses charged were in violation of the postal regulations (section 460), are surplusage, and in its instructions to the jury the District Court properly defined the offenses charged in the language of section 217 of the Penal Code.

[2] Defendant excepted to a ruling permitting Luella F. Kerr, wife of defendant, to testify in behalf of the government. By the common law a wife had a right to testify against her husband in a case of personal violence by the husband against her, and in our opinion the mailing of poisoned candy by a husband to his wife with intent to kill her constitutes such attempted personal violence against her as to make her a competent witness against him in respect to the act charged. Pappas v. U. S., 241 F. 665, 154 C. C. A. 423; Denning v. United States, 247 F. 463, 159 C. C. A. 517, L. R. A. 1918E, 487; Parker v. United States (C. C. A.) 3 F.(2d) 903.

[3] Error is assigned to the admission in evidence of a typewriting machine owned by a brother-in-law of the defendant, who lived near defendant. The machine was in the house of the brother-in-law where Kerr often went and where he remained overnight shortly before the time of the commission of the offense charged. There was no direct testimony that Kerr used that particular machine to address the package sent to Mrs. Kerr, but an expert testified that the typewriting on the package was done with that particular machine. There was also evidence that Kerr had access to it, and that at his own house he had a typewriter of the same make; that soon after the arrest of Kerr the brother-in-law's typewriter was found in a vault at a bank, and that between the time of the receipt of the candy by Mrs. Kerr and the finding of the typewriter, Kerr frequently went to the house of the brother-in-law. It was entirely proper to trace the places to which the machine was taken about the time of its use and up to the time it was taken into possession by the officers, after the candy was received by Mrs. Kerr, and it was for the jury to say whether or not the typewriter was the one on which the address to Mrs. Kerr was written.

[4] Over objection and exception, the court admitted testimony of the brother-in-law and his son, to the effect that after the papers had published news of the receipt of the candy the brother-in-law visited defendant, and shortly thereafter the brother-in-law took the typewriter to a bank and put it in a vault "for safe-keeping" and bought a new machine to take its place. The son testified that the old machine was "in perfect order" when the exchange was made. As circumstances, these matters were properly admitted, to be considered under the careful instructions of the court that defendant could not be held responsible for independent acts of another person with respect to the machine, and that unless the jury were satisfied that the persons secreting the machine in the bank did so at the instance of Kerr, the proof that the typewriter was secreted could not be considered as tending in any way to establish the guilt of Kerr, even though the person who concealed the machine may have believed that Kerr was guilty, or believed that the presence of the typewriter presented incriminating evidence.

[5] The assignment that the evidence was insufficient to justify the verdict cannot be upheld. Mrs. Kerr testified that in 1923 she separated from her husband and in 1924 obtained an interlocutory decree of divorce; that during her married life defendant had often abused her and their son; that at one time he threw her down and drew a gun; that he often told her she was going to die; that she carried $5,000 life insurance in favor of her son, and that defendant was angry because he was not named beneficiary; that in 1922 defendant told her he had been to a fortune teller, who said she was going to die very suddenly; that he asked her to take out $20,000 life insurance in his favor and offered to pay the premium on such a policy; that he was very jealous of her and stated that he would see to it that she never lived with any one else. She further testified that when she received the candy she only partially unwrapped it; that she knew a Mable Knight, but did not know any one by the name of

Blythe, but she did know a man by the name of Bly; that she inquired of Mable Knight and Mr. Bly if they had sent her a package, and upon learning that they had not she forwarded the package to Mr. Bly for examination.

The 16 year old son of the Kerrs testified that in 1922 his father told him he was likely to become so jealous of Mrs. Kerr that he was "liable to kill her"; and that in 1923 defendant told him he had been to a fortune teller who said Mrs. Kerr was going to die suddenly; that defendant told him in the event Mrs. Kerr did die he would like the witness to loan him about $500 from the insurance witness would receive upon his mother's death.

An expert chemist testified that he found that a number of pieces of the candy contained sodium cyanide, and in his opinion the quantity was sufficient to cause serious illness and perhaps death to one eating a piece of the candy.

Another witness testified that defendant told her not to be surprised if she found Mrs. Kerr dead at any time, and that if witness did so find her, to notify him.

There was also evidence that after receipt of the candy by Mrs. Kerr officers found on the ranch of defendant chocolate, walnuts, and a pestle and mortar in which there was sodium cyanide. Some of the sodium cyanide was in egg form and showed that pieces had been chipped off.

There were other circumstances connected with the charge which tended to connect the defendant with the commission of the crime, and we are satisfied that the evidence was properly for the consideration of the jury.

We find no error and affirm the judgment.