**UNITED STATES v. MITCHELL.**

No. 318.

Circuit Court of Appeals, Second Circuit.

July 26, 1943.

Opinion Adhered to on Rehearing

Nov. 8, 1943.

Albert C. Gilbert, of New York City, for appellant.

George Kennan Hourwich, of New York City, amicus curiae for appellant.

John C. Hilly, Asst. U. S. Atty., of New York City (Howard F. Corcoran, U. S. Atty., of New York City, on the brief), for appellee.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal by William Mitchell from his conviction by a jury of the crime of transporting his own wife in interstate commerce for the purpose of prostitution and debauchery, in contravention of the White Slave Traffic Act of 1910, 18 U.S. C.A. § 398. The wife testified at length against him; and although there was some corroboration from others of certain details of her testimony, it is quite obvious that no conviction could be had without her evidence. The errors pressed on this appeal are that her testimony was not legally admissible against him, and that the court erroneously refused to allow him to dismiss his counsel during the trial.

The revolting details of the testimony given by the wife need not be stated here further than is necessary to set forth the legal question involved. She said that she met defendant during February, 1941, at a cafeteria in San Diego, California, where she was employed as a waitress, that she went out with him soon thereafter, and that on the third or fourth occasion she had intercourse with him. A short time thereafter he asked her to go out to work for him as a prostitute, since he needed the money, telling her of a certain hotel where he had made all the arrangements for her, and later actually bringing her to another place, where he again asked her to work as a prostitute. Each time she refused. He was arrested in April, 1941, for contributing to the delinquency of a minor, the charge being based on the fact that he had stayed in a hotel room with her overnight. As she would not testify against him, the charge was dismissed. He was, however, indicted for possession of marihuana, and was convicted. The night before his arrest he again urged her to go to work as a prostitute at the places previously suggested. While in jail he wrote her that he needed $100 for a lawyer and "You know what to do." Upon his release in June, 1941, he went to Albuquerque, New Mexico, since he had been directed by the court to leave the state when his sentence was served. In October, 1941, in response to a letter from defendant, she went to Albuquerque, where they were married. She then got together a total of $800 of her own money, which she gave to defendant; and they left for New York, arriving on October 21, 1941.

After two weeks in New York, defendant told her that she would have to go out to hustle for him, as he needed money. There follows a considerable record of various urgings and threats on his part, and refusals on hers, in the presence of assisting third persons or otherwise, as chance seemed to determine, with suggestions of specific places where she might operate, as a result of which she eventually capitulated and worked at several places, which she named, including, among others, two specific hotels. During the time that she worked as a prostitute, defendant took all the money she earned, amounting to some $2,000. He was arrested on February 9 and convicted on March 17, 1942.

In considering the admissibility of the wife's testimony, distinction must be made between a general privilege prohibiting testimony by one spouse against another and the special privilege as to confidential communications. The latter seems quite thoroughly recognized and approved in this country, 8 Wigmore on Evi-

dence, 3d Ed. 1940, §§ 2332-2341,[1] whereas the former, while also widely recognized except where modified by statutes or limited by exceptions, has been strongly criticized as of obscure origin, uncertain rationalization, and unfortunate results in limiting judicial search for the truth. Wigmore, id. §§ 2227-2245, especially § 2228, quoting Jeremy Bentham's devastating blasts at the rule, and § 2245, expressing the hope that "before the centenary of Bentham's death, no vestige of the privilege will remain." It is omitted from the American Law Institute's Model Code of Evidence, although the privilege for confidential communications is retained. Rules 215, 216. See Ladd, A Modern Code of Evidence, 27 Iowa L.Rev. 214, reprinted in the Institute's Model Code, 329, 344; also Report of Committee on Improvements in the Law of Evidence, 1938, 63 A.B.A.Rep. 594, 595. In New York by statute a husband or wife is a competent witness against the other in a criminal cause, except that neither can be compelled to disclose a confidential communication made by one to the other during the marriage, N.Y.Penal Law § 2445, Consol. Laws, c. 40, and except that no conviction under N.Y.Penal Law § 1090 for the compulsory prostitution of a wife shall be had upon the testimony of the wife unsupported by other evidence.[2] Of course, the privilege of one spouse to testify for the other was established in the federal courts in the notable opinion of Justice Sutherland in Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136.

■ In the present case, defendant through his counsel objected "to his wife testifying unless she is going to testify voluntarily." The court asked her if she was willing to testify, and she replied, "Yes." The examination then proceeded. Although there is some basis at least under statutes for the view that the privilege is that of the witness, Commonwealth v. Barker, 185 Mass. 324, 70 N.E. 203; Commonwealth v. Barronian, 235 Mass. 364, 126 N.E. 833, clearly the better view is that the privilege is that of either spouse who chooses to claim it. Wigmore, id. § 2241. Even if the objection was not adequate in scope here, we think we should notice the assigned error, in view of its importance in the case, and all the circumstances, including the objections made to counsel hereinafter discussed. Indeed, it seems desirable to point out that no injustice was done the accused, for we think the testimony clearly admissible under a long recognized exception to the general principle.

■ This is the famous exception for Necessity, in the case of injuries to the spouse, stated in 1631 in Lord Audley's Case, Hut. 115, 3 How.St.Tr. 401, where the husband had instigated rape against his wife. The exception itself is well settled; the only question at all doubtful is whether it can be properly applied to a violation of the White Slave Traffic Act. Here the argument is made that this is not a crime against the person of the wife, but a crime against interstate commerce. But, as Wigmore, id. § 2239, says generally of all cases of enticing to prostitution or white slave traffic involving the wife, "of course morally it is a shameless offense against wifehood"; and we agree, as do all the authorities, with a single exception, which deal with the specific question under this statute. Denning v. United States, 5 Cir., 247 F. 463; Pappas v. United States, 9 Cir., 241 F. 665; Cohen v. United States, 9 Cir., 214 F. 23, certiorari denied 235 U.S. 696, 35 S.Ct. 199, 59 L.Ed. 430; United States v. Rispoli, D.C.E.D.Pa., 189 F. 271; United States v. Bozeman, D.C.W.D.Wash., 236 F. 432.[3] In the only case which has ruled otherwise, Johnson v. United States, 8 Cir., 221 F. 250, the court, as Wigmore, id.,

---

[1] But see Shenton v. Tyler, [1939] Ch. 620, reversing [1939] Ch. 271, that there was no such privilege at common law; criticized by Holdsworth, Communications between Husband and Wife, 56 L. Q.Rev. 137.

[2] Cf. 28 U.S.C.A. § 633, permitting, but not requiring, testimony of a spouse (other than confidential communications during the existence of the marriage) in prosecutions for bigamy, and 8 U.S.C.A. § 138, admitting testimony of husband or wife against the other in prosecutions for the importation of aliens for prostitution.

[3] The United States in its brief here quotes at length from the decision of Judge Caffey in accord, in dismissing a writ of habeas corpus to release a wife held as a material witness, not reported but affirmed in United States ex rel. Jackson v. Kelly, 2 Cir., 97 F.2d 1020. In the case of United States v. Gwynne, D.C.E.D.Pa., 209 F. 993, the curious distinction is made that testimony as to illegal acts before (but not after) marriage was inadmissible.

points out, failed to consider the exception at all. In Yoder v. United States, 10 Cir., 80 F.2d 665, the defendant's divorced wife was allowed to testify in denial of the defendant's testimony, but Judge McDermott rested the court's decision on the broader ground of the wife's competency. See also Cohen v. United States, 5 Cir., 120 F.2d 139. In Kerr v. United States, 9 Cir., 11 F.2d 227, certiorari denied 271 U.S. 689, 46 S.Ct. 639, 70 L.Ed. 1153, on a prosecution for violation of the mails, a wife was allowed to testify that her husband had mailed her poisoned candy.

To say of this statute at bar that all it does is to preserve the purity of our federal compact is to shut our eyes to the realities of modern federal crime, where the federal ground, whatever it may be, is the constitutional excuse and justification, rather the reason for being, of the legislation. Cf. Chamberlain, Federal Criminal Statutes, 1934, 20 A.B.A.J. 501; Federal Co-operation in Criminal Law Enforcement, 48 Harv.L.Rev. 489; 1 Law & Contemp. Prob. 399-508. Whatever else this statute may do, it strikes at the exploitation of women, and comes directly within the reason of the exception. After all, the situation of the injured wife deserves some consideration; and in circumstances such as are here presented, we think it would be shocking to deny her the right to testify. With Denning v. United States, supra, 247 F. at page 466, we believe that "a woman is as much entitled to protection against complete degradation as against a simple assault."

■ Although the further point has been urged in the two able briefs presented on behalf of the accused that confidential communications between husband and wife were improperly allowed, we think that is not the case here. For application of the privilege, the communications must be such as from their nature were fairly intended to be confidential. Wolfle v. United States, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617; Yoder v. United States, supra; Wigmore, id. § 2336. Wigmore indeed urges that there should be the same exception for necessity as in the privilege against testifying, id. § 2338; and the Institute's Model Code, supra, so provides. Further, it is clear that communications actually made outside the marriage relation, as before marriage, are not within the rule. Halback v. Hill, 49 App.D.C. 127, 261 F. 1007; Yoder v. United States, supra; Common-

wealth v. Barronian, supra; Wigmore, id. § 2335; and compare statutes cited above. Here the communications most important to the case occurred before marriage. Again, the privilege applies only to communications, not to acts, which would include the taking of the money from her, or to communications in the presence of third parties, such as the various threats in the presence of others, as well as the arrangements made with others for places for her to work. Wolfle v. United States, supra; Wigmore, id. § 2337, 2339. In view of all that is thus admissible, what would be left is of very minor importance, hardly distinguishable from what is to be admitted. And we feel quite clear that under the circumstances whatever defendant said to her was not intended to be confidential and does not come within the privilege. New York Life Ins. Co. v. Mason, 9 Cir., 272 F. 28; Kansas City Life Ins. Co. v. Jones, D.C.S.D.Cal., 21 F.Supp. 159; Parkhurst v. Berdell, 110 N.Y. 386, 18 N.E. 123, 6 Am.St.Rep. 384. On her testimony he made no bones about issuing his directions for her work of prostitution in the presence of others; and it is the merest chance, not the nature of the communications or his desire to keep them confidential, which finds certain of his orders to her made to her alone. We hold that the court committed no error in the admission of evidence.

The other assignment of error is based on an occurrence in the midst of trial after the wife's highly incriminating testimony had been given, when defendant attempted to dismiss the attorney appointed to represent him by the court. The background of this incident must be stated. Although the docket entries below do not appear in the record, the brief for the United States states that on February 16, 1942, or shortly after defendant's arrest, an attorney, Mr. Brandenberg, appeared on behalf of the wife, who was being held as a material witness, that defendant was indicted on February 20, and that Mr. Brandenberg filed a notice of appearance for defendant on February 25. Defendant pleaded not guilty on March 4. On March 11, when the case was called for trial, defendant addressed the court and stated that he wished to represent himself. The record before us is an abbreviated narrative record made up by counsel and certified by the court, as permitted by us in granting defendant leave to appeal in forma pauperis. It goes on: "He said he cannot afford a lawyer, so the Court offered

to assign a lawyer. Mr. Brandenberg requested permission to withdraw. The Court granted this request and then assigned Mr. Brandenberg to defend the defendant and the case was adjourned to March 12, 1942."

The case went on trial on March 13, 16, and 17. On March 16, when the wife's examination and cross-examination had been completed, the record shows that "Defendant Mitchell addressed the Court and stated 'I would like the dismissal of this attorney. I am within my rights.' " To this the court said: "I have assigned him to represent you," whereupon defendant said: "I refuse to accept this man as my attorney." Then the court replied: "Sit down. The Jury will disregard this demonstration." And the record continues: "During the trial Matthew F. Brandenberg, Esq., attorney for the defendant Mitchell, consulted with Mitchell and Mitchell made no further objection to Mr. Brandenberg acting as his attorney, except as set forth above."

The claim of error as to the assignment of Mr. Brandenberg in the first instance would seem clearly not well taken. The court here seems to have been properly solicitous of the rights and welfare of an accused. Defendant said he could not afford a lawyer; and so the court relieved him of this obligation, but, properly mindful of the constitutional right to counsel and its safeguarding in the federal courts (cf. The Right to Benefit of Counsel Under the Federal Constitution, 42 Col.L.Rev. 271, and cases hereinafter cited), provided for such counsel by appointing the lawyer already familiar with the case. Defendant, far from objecting, availed himself of the help thus given by the court. This incident tends to explain the court's later action, rather than intensify the asserted error, as defendant argues.

The second occurence, of course, presents more question. The abbreviated record does not show in full detail all that had occurred in the meantime. It does show, however, that the prosecution's strong case against the defendant had been made when it took place. It is true that the court appears to have acted somewhat peremptorily, obviously concluding that defendant was staging a disturbance not made in good faith. The task of appellate courts would be much easier if trial courts always acted with patience and forbearance; here the allow-ance of time for more explanation would not appreciably have affected the case for the prosecution with the jury, while it would not leave us so in the dark as to the defendant's intent. But even though we may not approve of the judge's haste in disposing of this objection, that is far from finding reversible error in his action, particularly in a case as strong as this against an accused. As it was, it appears that defendant did address the court twice, but neither time expressed a reason beyond that he was within his rights or disclosed his intent or desire as to the future course of the trial, whether he wished to continue without counsel or expected to have new counsel assigned him. It is certainly not improbable that he did hope for delay, which, in the situation he then found himself, would have been at least somewhat helpful to him and disturbing to the prosecution's strong case. We cannot know now whether this was deliberately planned or not; but we can see how, in view of the proper solicitude emphasized in the recent precedents on this very point, the raising of this issue under the circumstances can be made a shrewd means of embarrassing the prosecution.

Under these circumstances we think it proper at least to require that the defendant must show his hand. Thus the claim that one has a constitutional right to conduct his own defense is hardly in point, because we have no showing that he was trying to exercise that right and none that he was ever prevented therefrom. The cases cited by defendant stress equally, as, indeed, they properly should, the right of an accused to act for himself and his right to have a lawyer assigned in his behalf. See, among others, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. —; Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; People v. Price, 262 N.Y. 410, 413, 187 N.E. 298; and cf. 42 Col.L.Rev. 271, 1205; 31 Geo.L.J. 327. Obviously, however, those rights cannot be both exercised at the same time. The cases are dealing with a choice to be made at the opening of trial. It would be unfair to say that no further choice is possible after the case is opened, but it would be just as unfair to say that when a defendant sees a strong case made against him he can immediately dismiss assigned counsel and

then obtain a delay—and often a mistrial, at least in districts where calendars are crowded—through the device of having new counsel assigned him.

Presumably if an accused during the trial decides that he wishes to proceed alone and without delaying the trial, and makes his decision with full knowledge of the risks he is taking ("with eyes open," Adams v. United States ex rel. McCann, supra), that course should be open to him, in view of .the fact that he must have complete confidence in his counsel, In re Mandell, 2 Cir., 69 F.2d 830; People v. Thompson, 205 App.Div. 581, 199 N.Y.S. 868. A federal trial judge, however, is hardly justified, in view of the precedents, in allowing the trial to continue under such conditions, unless the course is specifically demanded by a defendant fully advised in the circumstances. Hence a change in counsel, or even a discharge, will usually point to a continuance. It therefore should be had only when it is clearly necessary to safeguard the rights of an accused, when, indeed, the necessity of that safeguarding under the circumstances which have developed in a particular case outweighs the prejudice to the prosecution.

In the situation here, where no reason appears in the record for defendant's action other than the damaging nature of the case against him, we do not think it was incumbent on the court to search beneath the surface for other grounds. It may be well, however, to point to the alternatives had such other grounds been assigned. If defendant *with eyes open* had claimed the right to conduct his own defense without delay, and the court had agreed, it seems clear that except for whatever personal satisfaction this would have given him, he undoubtedly would not have had as complete a trial as he received. Under his counsel's tutelage he himself took the stand in full denial of the essential elements of his wife's story, and an attack more subtle than a man of his apparent capacity could have executed alone was directed at her, supported by her diary entries and mail communications with a man who had been convicted under this statute to whom she was forced to admit she had loaned money. And if he had sought the appointment of other counsel, obviously he could not expect one who would have had this defense immediately in mind; and certainly there was no reason for delay or continuance.

Finding, therefore, no grounds upon which the just result reached below should be upset, we order that the judgment appealed from be

Affirmed.

FRANK, Circuit Judge (dissenting).

I cannot agree with my colleagues that there was no error in the manner in which the trial judge dealt with defendant's second request for dismissal of his attorney.

1. In discussing that treatment, it is desirable to note one fact which the majority opinion does not fully bring out: While the record indicates that the testimony of the wife was complete when that request was made, it by no means discloses that all of the testimony seriously damaging to defendant was then before the jury. Doubtless the wife's testimony was "strong"; but we have no possible means of knowing whether the testimony given after that request was denied did or did not influence the jury in arriving at its verdict.

2. I agree with my colleagues that the trial court acted properly in originally appointing Mr. Brandenberg as defendant's counsel. I also agree, arguendo, that, if defendant's subsequent request for the dismissal of Mr. Brandenberg in the middle of the trial plainly meant that defendant was then asking for the appointment of another counsel, it would have been in the discretion of the trial court to have refused the request, since, had it been granted, considerable delay would have ensued, the trial would have been interrupted, and, in all probability, a mistrial would have been necessary. My colleagues concede (as they must) that defendant did not ask for the appointment of a new counsel. They say, however, that, as he did not disclose whether he wished (a) to continue without counsel or (b) expected to have new counsel assigned to him, the trial judge properly construed his unexplained request as meaning the latter.

If the trial judge had asked defendant what he meant, and if defendant had then remained silent, such an interpretation might have been justified. But the trial judge did not ask this ignorant defendant [1] what he meant. Indeed, he gave the defendant no chance to explain. Instead, the judge peremptorily said, "Sit down," and then added, "The jury will disregard this demonstration." That regard for fairness in trials, and particularly in criminal prose-

---

[1] My colleagues describe him as not too subtle.

cutions, which is an inherent part of the administration of justice in a democracy, is not, I think, being adequately exercised when an ignorant defendant's ambiguous expression of his intentions are as strictly construed as if they were made by skilled counsel, especially in the absence of an opportunity on the defendant's part to explain his intentions.

Disregarding wholly that lack of opportunity, my colleagues make the surprising remark that "under these circumstances we think it proper at least to require that the defendant must show his hand," and proceed to hold that defendant, not having advised the trial judge that he desired to proceed without counsel, must be deemed, because of his brief interrupted remarks, to have intended to say that he wanted new counsel. To my mind, in the circumstances, the defendant is entitled now to assert the other interpretation of his request, i. e., that, for the balance of the trial, he be allowed to represent himself.

Surely, if he had made such an explicit request, a refusal would have been reversible error. No doubt, it would have been proper—perhaps it would have been necessary—for the judge to point out that abandonment of counsel might jeopardize the defendant. After such a warning, however, the judge would have lacked the right to insist that the defendant continue to have his case conducted by a lawyer with whom he was dissatisfied. The relation of lawyer and client is almost as intimate as that of husband and wife; most states permit a dissolution of the marital relations, and I know of no case in the federal courts holding that dissolution of the other relation is not allowable as a matter of course.

3. My colleagues, however, intimate that, even had that explicit request been made, nevertheless its refusal would not have been reversible error, since to grant such a request would have necessitated a delay for so long a period as to compel a mistrial. But no such consequence would follow. In such a situation, the trial judge might have discretion to rule that, if the defendant desired to continue the trial conducting it on his own behalf, he must do so without delay; the judge, at a minimum, would be justified in ruling that, at most, a delay of a few hours would be permitted. That, however, is not what the trial judge did here. He did not exercise his discretion. What he did was to prevent defendant's request from being articulated so that it could be ruled on informedly. That, I think, was substantial error.

4. My colleagues further intimate that, even if there was error, it should be ignored "in a case as strong as this against an accused." [2] Even assuming that the "harmless error" rule means that the substantiality of an error depends upon whether the judges of the appellate court, who have not heard or seen the witnesses, believe that, if they had constituted the jury, they would have found the defendant guilty—a position in which I do not concur [3] —that rule has no application to such a case as this. It is probably true that there are no absolute legal rights, none which must not yield in some circumstances. But there are some legal rights which, under our Constitution, approach an absolute; at least they so far approximate it that they do not give way when confronted with so vague a concept as that of harmless error. Thus no one would think of saying that in the federal courts the denial of the right of trial by jury (when not waived) could ever be harmless. The rights of an accused to appear for himself and not to be represented by a lawyer he does not want is perhaps not so powerful, yet is not too dissimilar. Circumstances may be conceivable where its denial would be proper, but they did not exist here.

[2] The majority opinion refers three times to the prosecutor's "strong case".

[3] See my dissenting opinion in United States v. Liss, 2 Cir., May 28, 1943, 137 F.2d 995, and cases there cited.