**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

LEON SEMINOLE,
  *Defendant-Appellant.*

No. 16-30202

D.C. No.
1:15-cr-00062-
SPW-1

OPINION

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted July 10, 2017
Portland, Oregon

Filed July 31, 2017

Before: Paul J. Watford and John B. Owens, Circuit
Judges, and Vince G. Chhabria,[*] District Judge.

Opinion by Judge Owens

---

[*] The Honorable Vince G. Chhabria, United States District Judge for
the Northern District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the defendant's convictions for strangling and assaulting his wife, in a case in which the district court compelled the defendant's wife to testify against him.

The panel rejected the defendant's argument that the Supreme Court in *Trammel v. United States*, 445 U.S. 40 (1980), effectively overruled the holding in *Wyatt v. United States*, 362 U.S. 525 (1960), that a court can compel a witness to testify against her spouse when she is the victim of the crime.

## COUNSEL

Robert L. Kelleher (argued), Kelleher Law Office, Billings, Montana, for Defendant-Appellant.

Bryan Timothy Dake (argued), Assistant United States Attorney, United States Attorney's Office, Great Falls, Montana, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## OPINION

OWENS, Circuit Judge:

Defendant-Appellant Leon Seminole ("Seminole"), an enrolled member of the Northern Cheyenne Tribe, appeals from his jury trial convictions for strangling and assaulting his wife in violation of 18 U.S.C. §§ 113(a)(8) and 113(a)(7). He contends that the trial court erred by compelling his wife – the domestic violence victim – to testify against him. The trial court did not err, so we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Strangulation and Assault

Seminole and his common-law wife Maxine Limberhand ("Limberhand") had a history of problems, and by August 2014, Limberhand needed a change – she planned on moving out of their house. On August 17, 2014, Limberhand drove with her brother Enoch and his girlfriend to the house so Limberhand could remove certain belongings.

When they arrived at the house, Limberhand exited the vehicle and spoke with Seminole outside. She then entered the house with Seminole, who shut the door. A few minutes later, Enoch saw his sister come "staggering out, and she was holding her cheek." Seminole followed her outside the house with a pistol in his hand. When Enoch approached, Seminole cocked his pistol and held it at his side. Limberhand was dizzy with a bump on her cheek and blood showing, and told her brother they should leave before Seminole shot somebody.

They left Seminole at the house and drove away, eventually meeting a Bureau of Indian Affairs ("BIA") officer who accompanied Limberhand to the emergency room and recorded her statement. Limberhand told the BIA officer that Seminole hit and knocked her into a corner, and then began swinging and kicking while she was down. He got on the floor and continued to hit her, and eventually placed her in a chokehold. She made similar statements to the emergency room doctor, who observed her right eye swollen shut, swelling around her left eye, a swollen and lacerated lip, other facial abrasions, a broken tooth, and a scraped knee. He opined that these injuries were consistent with blunt force trauma to her face. Two days later, Limberhand provided the BIA officer with a written statement consistent with her earlier recorded statement.

## B.  The Indictment and Trial

A grand jury returned a two-count indictment against Seminole for: (1) assault of a spouse by attempting to strangle and suffocate (18 U.S.C. §§ 1153(a) and 113(a)(8)), and (2) assault resulting in substantial bodily injury to a spouse (18 U.S.C. §§ 1153(a) and 113(a)(7)). The case proceeded to trial, where the government introduced evidence of defendant's guilt, including the testimony of Enoch, the emergency room doctor, and other people who witnessed Seminole's actions and Limberhand's subsequent injuries.

The government also called Limberhand as a witness, even though she made clear in a variety of ways that she wanted no part of this prosecution.[1]  In particular, she

---

[1] The government is not arguing that any error in compelling Limberhand's testimony was harmless.

attempted to assert the adverse spousal testimony privilege (or the "anti-marital facts" privilege, as our circuit sometimes calls it) to avoid taking the stand. The district court compelled her to testify, and that testimony differed dramatically from her earlier statements to the BIA officer and the doctor. This time, she told the jury that, in effect, she was the instigator, and Seminole merely tried to hug her to calm her down. The prosecution impeached her testimony with her previous statements detailing the assault and strangulation. The jury returned a guilty verdict on both counts, and Seminole received concurrent 48-month sentences for each count.

## II. DISCUSSION

### A. Standard of Review

This court reviews de novo a district court's construction of the Federal Rules of Evidence. *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004).

### B. The District Court Did Not Err In Compelling Limberhand's Testimony

Federal common law recognizes two separate marital privileges: (1) the so-called "adverse spousal testimony" or "anti-marital facts" privilege, which permits a witness to refuse to testify against his or her spouse; and (2) the "marital communications" privilege, which allows either spouse to prevent testimony concerning statements privately communicated between them. *See United States v. Griffin*, 440 F.3d 1138, 1143–44 (9th Cir. 2006); *United States v. White*, 974 F.2d 1135, 1137 (9th Cir. 1992). This case concerns the former.

In *Wyatt v. United States*, 362 U.S. 525 (1960), a Mann Act prosecution, the Supreme Court addressed the same issue as we have here – whether a trial court could compel a wife to testify against her husband, despite the well-established spousal testimony privilege that normally would prohibit such testimony. The short answer was yes the court could, due to a well-established exception to the well-established privilege – if the spouse is the victim of the defendant's crime, the privilege does not apply, and absent the privilege, compelling the spouse (like compelling any other witness) is within the court's power. *Id.* at 530; *see also Shores v. United States*, 174 F.2d 838, 841 (8th Cir. 1949) ("[T]he wife . . . stood in the same position as any other victim of another's criminal act.").[2]

The "spouse as victim" exception to the adverse spousal testimony privilege did not originate in *Wyatt* – it has existed for hundreds of years, as the Supreme Court and our court have recognized.[3] Courts regularly reaffirm *Wyatt*'s holding

---

[2] Although the Court in *Wyatt* dealt with the Mann Act, 362 U.S. at 530–31, no court has read the exception to apply only in Mann Act cases. Indeed, "[t]he classic case for invocation of the exception is wife-beating," and "it is generally agreed that an assault, battery, or other form of corporeal violence is within the exception." 25 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5592 (1st ed. 1989). Courts have also applied the exception outside the traditional domestic violence and Mann Act context. *See, e.g.*, *Herman v. United States*, 220 F.2d 219, 226 (4th Cir. 1955) ("[A] wife can be a witness against her husband not only when personal injury to her of a physical or moral nature is claimed, but also where the crime affects her property."). We do not decide the exception's outer limits, because this case falls squarely within it.

[3] The Supreme Court dates the exception back to 1631. *See, e.g.*, *Trammel v. United States*, 445 U.S. 40, 46 n.7 (1980) (citing *Lord Audley's Case* (1631) 123 Eng. Rep. 1140); *see also* Note, *Victim-Wife's*

that a court can compel a witness to testify against her spouse when she is the victim of the crime, even if she is adamant that she not do so. *See, e.g.*, *United States v. Underwood*, 859 F.3d 386, 390 (6th Cir. 2017) (citing *Wyatt* and recognizing that "federal courts have also created an exception to the privilege in instances in which the spouse commits an offense against the other spouse"); *Brown v. Dart*, 667 F. App'x 873, 874 (7th Cir. 2016) (privilege was unavailable to domestic violence victim because under *Wyatt*, "the victim spouse cannot be prevented from testifying [against her husband], and can even be compelled"); *United States v. Chandler*, No. 2:10-cr-00482, 2011 WL 1871223, at *3–6 (D. Nev. May 16, 2011) (under *Wyatt*, the court can compel spouse's testimony when defendant's abuse of her was "facilitated and inextricably intertwined with the conduct for which [he] was charged").

Hundreds of years of adverse and ironclad precedent normally end a case. But Seminole argues that the Supreme

---

*Testimony May Be Compelled in Prosecution of Husband for Mann Act Violation: Wyatt v. United States*, 362 U.S. 525 (1960), 39 Tex. L. Rev. 508, 510 n.11 (1961). The Supreme Court and our court have referenced it many times. *See Stein v. Bowman*, 38 U.S. 209, 221 (1839) ("It is a general rule that neither a husband nor wife can be a witness for or against the other. This rule is subject to some exceptions; as where the husband commits an offence against the person of his wife." (citations omitted)); *Cohen v. United States*, 214 F. 23, 29 (9th Cir. 1914) ("[T]he common law made an exception to the rule of privilege in cases where the husband or wife was called as a witness to testify as to personal wrong or injury sustained from the other."); *Kerr v. United States*, 11 F.2d 227, 228 (9th Cir. 1926) (wife permitted to testify against husband in prosecution for mailing her poisoned candy, as under "the common law a wife had a right to testify against her husband in a case of personal violence by the husband against her"); *see also White*, 974 F.2d at 1138 (applying exception to marital communications privilege).

Court in *Trammel v. United States*, 445 U.S. 40 (1980), dramatically altered the spousal privilege landscape. We disagree.

In *Trammel*, the Court considered whether a criminal defendant could use the adverse spousal testimony privilege to prevent his wife from taking the stand at his narcotics trafficking trial, even though the spouse was willing to do so. 445 U.S. at 42–43. Until *Trammel*, the answer was yes – the privilege barred "the testimony of one spouse against the other unless both consent[ed]." *Hawkins v. United States*, 358 U.S. 74, 78 (1958). After reviewing the history and purpose of the privilege, the Court narrowed *Hawkins* and the privilege: "the witness-spouse alone has a privilege to refuse to testify adversely." 445 U.S. at 53. Although *Trammel* did not feature a crime against a spouse, the Court went out of its way to recognize that the exception to the privilege "for cases in which one spouse commits a crime against the other . . . was a longstanding one at common law." *Id.* at 46 n.7.

Despite *Trammel*'s narrowing the scope of the privilege, Seminole contends that the Court actually broadened it considerably with the following language at the end of the opinion: "the witness may be neither compelled to testify nor foreclosed from testifying." *Id.* at 53. According to Seminole, when the *Trammel* Court wrote "the witness may [not be] compelled to testify," it meant that in all circumstances, with no exception. The Court, the argument goes, effectively overruled *Wyatt* with this phrase.

Seminole reads too much into this language. If a court says that hearsay is inadmissible without noting its countless exceptions, this does not reflect an intent to eliminate the exceptions. Similarly, it is clear from the context of *Trammel* that the Court was not overruling *Wyatt* with these

12 words. Rather, it was simply stating the general principle that, absent an exception, a witness cannot be compelled to testify against her spouse.[4]  But there is an exception – one the Court in *Trammel* identified as existing as early as 1631, but the facts in *Trammel* did not implicate.  Seminole has not identified any cases that hold that *Trammel* somehow eliminated a court's ability to compel a witness to testify against her spouse when she is the victim of the spouse's crime.[5]  And to the extent that the Court in *Trammel* found "special relevance" in state law trends under Federal Rule of Evidence 501 "because the laws of marriage and domestic relations are concerns traditionally reserved to the states," *id.* at 47–50, the trend here is all one way – no state in our circuit permits a spouse to refuse to testify in a domestic violence prosecution.  *See Chandler*, 2011 WL 1871223, at \*6 (collecting statutes of Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, and Washington).

We are far from solving the crisis of domestic violence, as "[t]his country witnesses more than a million acts of domestic violence, and hundreds of deaths from domestic

---

[4] It is for this same reason that Seminole overreads similar language in *United States v. Ramos-Oseguera*, 120 F.3d 1028, 1042 (9th Cir. 1997), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000), which also did not require discussion of the "spouse as victim" exception.

[5] *United States v. Jarvison*, 409 F.3d 1221 (10th Cir. 2005), which neither party cited, does not alter our view.  The Tenth Circuit in *Jarvison* quoted the same phrase from *Trammel* to hold that a court could not compel a spouse to testify against a defendant who was accused of sexually abusing their granddaughter.  *Id.* at 1231–32.  The opinion neither cited *Wyatt* nor the spousal victim exception that *Trammel* expressly identified.  Because *Jarvison* did not feature a spousal victim, we do not opine on its validity, but do conclude it has no application here.

violence, each year." *United States v. Castleman*, 134 S. Ct. 1405, 1408 (2014). It is a crime that is "notoriously susceptible to intimidation or coercion of the victim to ensure that she does not testify at trial." *Davis v. Washington*, 547 U.S. 813, 832–33 (2006). *Wyatt*'s "spouse as victim" holding dictates that the district court correctly compelled the testimony of Limberhand.

**AFFIRMED.**