UNITED STATES v. RISPOLI.

(District Court, E. D. Pennsylvania. June 14, 1911.)

No. 18.

WITNESSES (§ 61*)—COMPETENCY—PRIVILEGE—HUSBAND AND WIFE—"PER-
SONAL INJURY."

In prosecution of a husband for knowingly persuading his wife to go
from one state to another with intent that she should practice prostitu-
tion in violation of the white slave act (Act Cong. June 25, 1910, c. 395,
§ 3, 36 Stat. 825), prohibiting white slave traffic, such offense was in the
nature of a "personal injury" to her person so as to entitle her to testify
against her husband.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 163, 174–176;
Dec. Dig. § 61.*

For other definitions, see Words and Phrases, vol. 6, pp. 5340–5344;
vol. 8, p. 7753.]

Indictment by the United States against Louis Rispoli for violating
the white slave act, in that defendant knowingly persuaded a woman
to go from one state to another in interstate commerce with intent that
she should there engage in immoral practices, and knowingly causing
her to be carried as a passenger in interstate commerce on the line of
a common carrier from New York to Philadelphia.

Upon opening the case, the government called to the stand the woman
alleged to have been persuaded and brought to Philadelphia in viola-
tion of the act. Counsel for defendant objected to her examination,
asserting that she was the wife of the defendant. The assertion was
assumed to be true, and, upon this assumption, the government pre-
sented the following argument in favor of the examination:

The question raised upon this objection—a question, be it noted, of marital
*privilege*, rather than of testimonial *competency*, as would be the case if the
testimony were *for* the defendant and not *against* him—is to be passed upon
in the light of the law of Pennsylvania as it existed when the courts of
the United States were established under the judiciary act of 1789 (Logan
v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429); in other
words, the common law of that date. The offense for which the defendant
is on trial being the creation of an act of Congress passed in 1910, and
representing an extension of the powers of Congress under the interstate
commerce clause, which naturally enough finds no prototype in English or
American legislation prior to the date in question and necessarily denies us
the aid of any near precedent among the available cases, the decision should
be guided by general analogies and a consideration of the spirit and purpose
of the rule of privilege and its exceptions. Many reasons have been ad-
duced in support of the rule itself, granting to husband and wife the privilege
not to testify against, or be testified against by, the other. A fair state-
ment, however, of the two principal reasons upon which the rule has been
based is found in the following language from the opinion of Judge Paxson in
the Court of Oyer and Terminer of Philadelphia in 1871 (Com. v. Reid, 8
Phila. [Pa.] 385):

"First, the community of interest subsisting between husband and wife
and the identity of their legal rights. Second, motives of public policy which
excluded them upon the ground that it would tend to disturb the harmony
of the domestic relations to allow the wife or husband to be a witness for
or against each other."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Exceptions to this rule, as firmly established as the rule itself, although not as clearly defined, appear throughout its entire history, based, to quote Judge Paxson again, upon "the necessity of the case, partly for the protection of the life and liberty of the wife, and partly for the sake of public justice." These exceptions are expressed in a variety of cases where injury of a personal nature has been threatened or inflicted upon the wife and where the principal reason for the rule, to wit, the avoiding of marital dissension, is conspicuously absent. One of the earliest and most instructive instances of the application of the exception is found in the notorious case of the trial of Lord Audley in the House of Lords in 1631, on a charge of having instigated a rape against his wife. 3 Howell's State Trials, 401. Prior to the trial, the question was propounded to the Justices of Assize "whether the wife in this case might be a witness against her husband for the rape," to which the Justices replied, "She might, for she was the party wronged; otherwise, she might be abused." In the trial before the House of Lords, the question again arose upon the objection of the defendant, whereupon the judges replied that, while in civil cases the wife might not be allowed to testify against her husband, "in a criminal cause of this nature, where the wife is the party grieved, and on whom the crime is committed, she is to be admitted a witness against her husband."

The principle underlying the decision above cited is found as an earmark of all subsequent rulings where an exception has been established, although the variation of judicial rulings upon this point is such that it is impossible to accurately state a rule which shall even fairly reconcile the conflicting decisions which have been rendered. Each case necessarily stands upon its own peculiar facts, and the case at bar is no exception to this observation. All the cases have agreed that an exception existed in the case of "personal injuries," but no definition of a "personal injury" that will reconcile the cases can be discovered, or suggested, nor can it be denied that the exception has been applied to many cases where no personal injury in the ordinary sense of the word has been suffered.

Amid this conflict of decision it seems that Mr. Wigmore (Pocket Code of Evidence 1910) is not far from the truth in offering as "a broad restatement of the common-rule exception," the statement that the privilege does not apply "in issues involving a tort by one against the other or a crime based on a moral wrong by one against the other." See, also, 4 Wigmore on Evidence, §§ 2227–2240. At any rate, whether this statement is or is not too broad, it is clear that the exception to the common rule must plainly be held to apply to a case such as the present, where the offense is based upon an act passed for the suppression of the "white slave" traffic, and where the indictment charges that the defendant caused a woman who is now assumed to be and to have then been his wife to be carried in interstate commerce for the purpose of causing her to engage in prostitution. The injury is a wrong of a peculiarly personal and revolting character, and it would indeed be a strange doctrine if we were compelled under the fiction of preserving domestic harmony to protect the husband from a disclosure of his crime by its victim, who is necessarily the chief, if not the only, witness to its commission. The terse reply of the Justices in Lord Audley's Case aptly recurs upon this point.

The assertion that the crime is based primarily upon an act of interstate transportation, rather than upon direct personal injury, does not alter the application of the exception. The court should look rather at the crime charged in its entirety, and at the plain purpose and scope of the act, and thus regarded there seems to be no doubt that the offense charged is fairly within the reason and spirit of the common-law exception to the rule of privilege.

We note that this was the attitude of the Supreme Court of Pennsylvania in construing the language of the witness act of 1887 (P. L. 158), permitting a husband or wife to testify against either "in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other." Com. v. Spink (1890) 137 Pa. 255, 20 Atl. 680. In that case, the

indictment charged a *conspiracy* to have a sane person confined in an insane asylum. In sustaining the admission of the wife's testimony, the Supreme Court used the following language:

"The words of the act establishing the competency of the wife or husband are not limited to prosecutions for the immediate act of violence, but embrace 'any criminal proceeding,' for such acts. A conspiracy to do an act of violence upon the body of another is a crime, and an indictment therefor is a criminal proceeding; and it may be quite as material, in the administration of criminal justice, to have the testimony of the injured party to the facts which tend to prove the conspiracy, as to the facts which tend to prove the direct act of personal violence."

While the decision is concerned with the interpretation of a statute, the liberal view taken by the court, and the reasons assigned therefor, are equally applicable to the case before us.

Jasper Yeates Brinton, Asst. U. S. Atty.
David Phillips, contra.

J. B. McPHERSON, District Judge. The court overruled the defendant's objection of privilege, and permitted the witness to be examined, on the ground that the offense charged was against the wife's person as really as if the defendant were charged with threatening to inflict physical violence, or of having actually struck her. In cases where the wife's personal rights were concerned, the exceptions to the husband's privilege should be benevolently regarded, and the offense in question was essentially within the spirit of the long-established rule that allows her to testify in protection or in vindication of her right to be secure in her person against threat or assault, even by her husband.