COHEN v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   May 4, 1914.)

No. 2339.

1. PERJURY (§ 27*)—SUBORNATION OF PERJURY—INDICTMENT.

Where an indictment for suborning a witness to testify falsely before a United States commissioner sufficiently showed that the proceeding was a preliminary examination, had not on an indictment or information, but on a complaint as provided by Rev. St. § 1014 (U. S. Comp. St. 1901, p. 716), as amended by Act Aug. 18, 1894, c. 301, 28 Stat. 416, with a view to holding the person accused in the complaint to answer for a crime charged, the indictment was not fatally defective because the words "trial" and "issue" were used in referring to the hearing before the commissioner, on the ground that the commissioner had no jurisdiction to try any issue between the United States and a person charged with crime.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 95; Dec. Dig. § 27.*]

2. PERJURY (§ 13*)—SUBORNATION OF PERJURY—ARREST OF PERSON SUBORNED.

Where, in a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), defendant acted as attorney for accused and, prior to a preliminary hearing before a United States commissioner, with knowledge that W. was accused's wife, advised her to testify falsely before the commissioner in order that she might assist to obtain the discharge of her husband, it was no objection to defendant's liability for subornation of perjury that the witness suborned had not been arrested when defendant was charged with having committed the crime, or that she knew she would be arrested and had in mind a particular tribunal or proceeding before which the perjury should be committed.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 61½; Dec. Dig. § 13.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CRIMINAL LAW (§ 1158*)—APPEAL—DIRECTED VERDICT—DENIAL.

In determining whether error has been committed in refusing a directed verdict in favor of defendant, the appellate court can only inquire whether there was any evidence to sustain the verdict.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3061–3066, 3070, 3071, 3074; Dec. Dig. § 1158.*]

4. CRIMINAL LAW (§ 429*)—EVIDENCE—JUDICIAL RECORDS.

In a prosecution of defendant for suborning the wife of G. to commit perjury in his favor on the hearing of a complaint against him before a United States commissioner for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), the complaint filed in such hearing before the commissioner against G. was properly admitted to prove one of the steps in the proceeding in which the alleged false testimony was suborned to be given.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1018, 1020; Dec. Dig. § 429.*]

5. COURTS (§ 349*)—FEDERAL COURTS—STATUTES—"MODES OF PROCESS"—COMPETENCY OF WITNESSES.

Rev. St. § 1014 (U. S. Comp. St. 1901, p. 716), provides that any offender against the laws of the United States may be arrested, imprisoned, or bailed, etc., agreeably to the usual mode of process against offenders in a particular state. *Held*, that the words "mode of process" are equivalent to "mode of proceeding," and hence do not include the qualifications of witnesses the competency of whom is not governed by state statute, but by the common law, except where Congress has made specific provisions on the subject.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 925; Dec. Dig. § 349.*

For other definitions, see Words and Phrases, vol. 5, p. 4550.

Competency of witnesses in federal courts—following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 602; Hinchman v. Parlin & Orendorff Co., 21 C. C. A. 278.]

6. WITNESSES (§ 52*)—COMPETENCY—HUSBAND AND WIFE.

At common law a husband and wife were under total disability to testify for each other, nor could they testify against each other unless both waived the privilege and consented thereto, subject to the exception that where a husband or wife was called as a witness to testify as to a personal wrong or injury sustained from the other they were competent to testify.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 124, 126–136, 165, 415, 416, 417, 419, 424; Dec. Dig. § 52.*]

7. WITNESSES (§ 61*)—HUSBAND AND WIFE—TORTS—"PERSONAL INJURY."

Where a husband transported his wife in interstate commerce from one state to another for an immoral purpose, such conduct constituted a personal wrong against her which entitled her to testify against him at common law; the term "personal injury" as applied to the wife, as used in the rule authorizing her to testify against her husband in case of a personal injury to her, not being limited to cases of personal violence, but might include cases involving a tort against the wife or a serious moral wrong inflicted on her.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 163, 174–176; Dec. Dig. § 61.*

For other definitions, see Words and Phrases, vol. 6, pp. 5340–5344; vol. 8, p. 7753.]

8. PROSTITUTION (§ 2*)—WHITE SLAVE ACT—VIOLATION—TRANSPORTATION OF WIFE.

In a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp 1911, p. 1343]), the fact that the victim was the wife of accused was no excuse.

[Ed. Note.—For other cases, see Prostitution, Dec. Dig. § 2.*]

9. PERJURY (§ 37*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE. ·

Where, in a prosecution for suborning the wife of one charged before a United States commissioner with violating the White Slave Act (Act June 25, 1910, c. 395, 36. Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), the witness was not known at the time to be the wife of accused, and she refused to answer any question until she had an opportunity to consult with defendant as her attorney and was subjected to some coercion by the commissioner and district attorney, and after she had consulted with defendant and while defendant was in attendance at the hearing she freely and without coercion gave the false testimony he advised her to give, the court properly charged that the manner in which the witness was treated before the commissioner was not material, but if she was sworn and testified as a witness and knowingly and willfully testified falsely she committed perjury, and that any ill treatment she might have received at the time would be no justification or excuse to defendant if she committed the perjury at his request or instigation.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 134–138; Dec. Dig. § 37.*].

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Max G. Cohen was convicted of subornation of perjury, and he brings error. Affirmed.

The plaintiff in error was convicted of subornation of perjury in advising and inducing one Esther Wood to testify falsely in a proceeding before a United States commissioner, wherein one Jake Gronich was arrested and held to answer for a violation of the White Slave Traffic Act. Upon the trial it appeared that Gronich and another had been arrested on May 7, 1912, charged with having procured and caused the transportation of said Esther Wood from Cleveland, Ohio, to Portland, Or., for the purposes of prostitution and debauchery. There was evidence that Esther Wood, who was the wife of Gronich, was not present at the time when he was arrested; that upon learning of his arrest, the plaintiff in error, an attorney at law, was called from his office to consult with her as her attorney; that he went to a room in a hotel, in which she and three other prostitutes were; that he knew that Gronich had been arrested under said charge, and that the prosecution was to be had before the federal authorities; that Esther Wood informed him that she was a prostitute and that she had practiced as such in Denver, Colo., and Baker City, Or., and Portland, Or.; that he thereupon advised her to testify that she had never practiced prostitution in either of those places or elsewhere; that he asked her if the officers were in possession of any letters passing between her and Gronich, to which she replied that there were some postal cards in her trunk, of which the officers had possession; that the plaintiff in error advised her that if those were shown to her to say that she did not remember them, and to deny any knowledge of them; that Esther Wood inquired of him what she should do in case a certain girl, who had been transported with her and for the same purpose, should tell the truth as to her prostitution; that the plaintiff in error then advised her that in that case she (Esther Wood) was to say that such prostitution was without the sanction of Gronich, but was not to say this until she knew that the other girl had given such information. There was evidence that during the hearing before the commissioner the plaintiff in error repeated such advice to Esther Wood, and told her to stick to her story, and not to talk before the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

commissioner until he got there; that in pursuance of such advice she denied that she had ever practiced prostitution in Baker City and Denver, or in Portland; that she had so testified before the commissioner, for the reason that the plaintiff in error had told her it was the only way to save Gronich, "because they found the tickets on him"; and that after she had so testified, he inquired of her whether she had talked, that she told him no, and that he said, "Good."

Mannix & Sullivan, Beach, Simon & Nelson, and R. E. Moody, all of Portland, Or., for plaintiff in error.

Clarence L. Reames, U. S. Atty., and Robert R. Rankin, Asst. U. S. Atty., both of Portland, Or.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] It is assigned as error that the court overruled the demurrer to the indictment, and it is contended that the indictment is fatally defective in that the words "trial" and "issue" were used in referring to the hearing before the United States commissioner, in which the alleged perjured testimony was given, for the reason that a United States commissioner is without jurisdiction to try any issue between the United States and the person charged with crime. We find no merit in the contention. The indictment sufficiently shows what the proceeding was. The plaintiff in error was in no way prejudiced by the fact that the indictment against him described the proceeding before the United States commissioner as the trial of an issue. He was well aware of the nature of the proceeding, and had advised the witness Esther Wood as to the testimony she should give at the examination. In a sense there are "issues" to be tried on such a preliminary examination, the issues whether a crime has been committed, and whether there is reasonable ground to believe that the defendant committed it, and these issues are tried for the purpose of deciding whether the defendant shall be held to answer for the crime charged. The plaintiff in error cites the case of State v. Furlong, 26 Me. 69, in which, in an indictment for perjury, it was alleged that a certain person accused of crime had been put upon trial before a justice of the peace, and that the justice of the peace had proceeded to hear and determine the matter, that the defendant was a witness on that trial and testified falsely, "to cause the accused to be convicted of the offense charged." In that case the court held that it appeared from the indictment that the justice of the peace had assumed jurisdiction to try and pass finally upon the guilt or innocence of the accused, and thus had exercised a jurisdiction with which he was not vested. But it does not appear from the indictment in the case at bar that the commissioner attempted to exercise jurisdiction to determine the guilt or innocence of Gronich, and it does distinctly appear that the proceeding was a preliminary examination had, not upon an indictment or an information, but upon a "complaint" as provided in Revised Statutes, § 1014 (U. S. Comp. St. 1901, p. 716), as amended by the Act of August 18, 1894, c. 301, 28 Stat. 416, with a view to holding Gronich to answer for the crime charged.

[2, 3] It is contended that it was error to deny the motion of the

plaintiff in error for a directed verdict in his favor on the ground that there was no evidence to sustain a verdict against him, that Esther Wood had not been arrested at the time when the defendant is charged with having committed the crime set forth in the indictment, that there was no evidence that she knew she would be arrested, and that the crime of subornation of perjury cannot be committed unless the person charged therewith had in mind some particular tribunal or proceeding before which the perjury should be committed. But there was evidence that, at the time when the plaintiff in error advised Esther Wood concerning her testimony, he was aware of the arrest of Gronich, that he knew that Esther Wood was the wife of Gronich, and that all of his advice to her as to her testimony had reference to the testimony that she was to give on the examination of Gronich before the United States commissioner, that when she asked the plaintiff in error if he did not think it best for her to leave town so that the officers could not get her, he said no, that she might as well go down and give herself up, that they were bound to get her. In addition to this, there is evidence that the plaintiff in error repeated his advice to Esther Wood during the investigation before the commissioner, and that, when she told him that she had followed his instructions, he approved her conduct in so doing. There was other evidence to sustain the verdict. In considering the question whether there has been error in refusing a directed verdict for the defendant on a criminal trial, this court can inquire only whether there was any evidence to sustain the verdict. Hedderly v. United States, 193 Fed. 561, 114 C. C. A. 227; Boren v. United States, 144 Fed. 801, 75 C. C. A. 531.

[4] We find no merit in the contention that it was error to permit the introduction in evidence of the complaint against Gronich which had been filed in the preliminary hearing before the commissioner. It was properly admitted to prove one of the steps in the proceedings in which the alleged false testimony was suborned to be given, and to sustain the allegations of the indictment. But if it was immaterial to the issue as against the plaintiff in error, as he now contends, its admission could not possibly have prejudiced him on the trial of the case in the court below. The contention that the testimony of Esther Wood tending to show the commission of the crime, and her testimony in regard to post cards exhibited to her at the hearing before the commissioner, were inadmissible, is so plainly without merit as to require no discussion.

[5] It is assigned as error that the court below admitted the testimony of Esther Wood to the effect that she had sworn falsely at the preliminary hearing before the commissioner, for the reason that on that hearing she was incompetent to be a witness against Gronich, to whom she had been married in December, 1910, and whose wife she still was. It does not appear that any objection whatever was made to her testimony in the court below, nor does it appear that, when she testified at the preliminary hearing, she did so against her consent, or without the consent of Gronich. Error cannot be predicated on the admission of her testimony in the court below as to what she had testified at the preliminary hearing, unless, when testifying at that hearing

she was, by virtue of the marital relation alone, under such disability that her testimony could not lawfully be received at that hearing. The plaintiff in error contends that the question of the admissibility of her testimony was determined by section 1535, c. 21, of Lord's Oregon Laws, which provides:

"In all criminal actions, where the husband is the party accused, the wife shall be a competent witness, and when the wife is the party accused, the husband shall be a competent witness; but neither husband nor wife, in such cases, shall be compelled or allowed to testify in such case unless by consent of both of them; provided, that in all cases of personal violence upon either by the other, the injured party, husband or wife, shall be allowed to testify against the other."

And that that statute was made applicable to the proceeding on the preliminary hearing by virtue of section 1014 of the Revised Statutes, which provides that any offender against the laws of the United States may be arrested, imprisoned, or bailed, etc., "agreeably to the usual mode of process against offenders in such state."

It is argued that the meaning of this section is that, in all hearings on the arrest and commitment of offenders against the laws of the United States, the practice and rules of evidence of the state in which the hearing is had shall be followed. We do not so construe that section. It provides only, as we held in United States v. Dunbar, 83 Fed. 151, 27 C. C. A. 488, that the proceeding before the commissioner shall assimilate the proceeding for a similar purpose provided by the laws of the state. It should not be assumed that it was the intention of Congress, in adopting section 1014, to enact that the admissibility of evidence in proving an offense against the laws of the United States shall depend upon the laws of evidence of the state in which the examination is had, with the result that for the same act a defendant might be held to answer in one state and discharged in another, and that the witnesses on the preliminary examination might be different from those who were competent to testify on the trial. The words "mode of process" are equivalent to mode of proceeding. Wayman v. Southard, 10 Wheat. 1, 27, 6 L. Ed. 253. The qualifications of witnesses have nothing to do with the "mode of process." It has never been held, so far as we are advised, that a United States commissioner must, on a preliminary examination, observe the laws of the state as to the qualifications of witnesses and rules of evidence. In United States v. Patterson, 150 U. S. 65, 14 Sup. Ct. 20, 37 L. Ed. 999, the court said:

"It was held, in the case of United States v. Ewing, 140 U. S. 142 [11 Sup. Ct. 743, 35 L. Ed. 388], that, in view of section 1014 of the Revised Statutes, the law of the state in which the services are rendered must be looked at, in order to determine what is necessary in the matter of procedure."

The competency of witnesses in criminal trials in the courts of the United States is not governed by a statute of the state, but by the common law, except where Congress has made specific provisions on the subject. Logan v. United States, 144 U. S. 263, 303, 12 Sup. Ct. 617, 36 L. Ed. 429. There being no specific provision on the subject, the common law is applicable.

[6] At common law the husband and wife were each under total disability to testify for the other, but the disability did not extend to the testimony of one against the other. Such testimony of the one against the other was excluded, however, unless both the husband and wife waived the privilege and consented to its admission. Wigmore on Evidence, § 2242; Benson v. Morgan, 50 Mich. 77, 14 N. W. 705. But the common law made an exception to the rule of privilege in cases where the husband or wife was called as a witness to testify as to personal wrong or injury sustained from the other. Wigmore, § 2239.

[7] We are of the opinion that the personal injury to a wife which permits the admission of her testimony against her husband, within the exception recognized at the common law, and expressed in the Oregon statute, is not confined to cases of personal violence, but may include cases involving a tort against the wife, or a serious moral wrong inflicted upon her, and that in a case of the prosecution of a man for bringing his wife from one state to another with intent that she shall practice prostitution, in violation of the White Slave Act, his act in so doing is such a personal injury to her as to entitle her to testify against him. It has been so held in United States v. Rispoli (D. C.) 189 Fed. 271, and in United States v. Gwynne (D. C.) 209 Fed. 993. The conclusion which we reach is that Esther Wood's testimony at the preliminary examination was admitted with her own consent and that of her husband, so that it was not incompetent, whether governed by the common law, or by the Oregon statute, and that it was also admissible, whether governed by the common law or the state statute, on the ground that it related to a personal injury inflicted upon the wife by her husband.

[8] The foregoing considerations are applicable also to the contention that the court erred in instructing the jury that the fact that Esther Wood was the wife of Gronich would not excuse him from violation of the White Slave Traffic Act, and that no man has a right to transport his own wife from one state to another for the purpose of prostitution, so that the fact that she was his wife was wholly immaterial.

[9] Error is assigned to the following instruction:

"Something has been said about the manner in which Miss Wood was treated before the commissioner. Now, I do not think that that is very material in this case. If she was sworn and testified as a witness in that case, and knowingly and willfully testified falsely, she committed perjury, and that is about all that is necessary to be said about that matter. It is one of the facts in the case, and you have a right to weigh it along with all the other testimony in the case; but however badly she may have been treated, or however wrongly she may have been treated, would be no justification or excuse on behalf of this defendant if, as a matter of fact, she committed perjury at his request or his instigation."

This instruction was not inapplicable to the state of facts disclosed by the evidence. Esther Wood, when she first appeared before the commissioner, was not known to be the wife of Gronich. She at first refused to answer questions. She was subjected to some coercion by the commissioner, and the district attorney, to compel her to answer. She declined to do so until she might have an opportunity to consult with the plaintiff in error, her attorney. After she had that consultation, and while the plaintiff in error was in attendance at the hearing,

she freely and without coercion gave the false testimony which he advised her to give. No suggestion was made at any time that she had the right to remain silent by reason of the fact that she was the wife of Gronich.

We find no error.

The judgment is affirmed.