**UNITED STATES v. WILLIAMS.**

No. 7522.

District Court, D. Minnesota,
Fourth Division.

April 26, 1944.

NORDBYE, District Judge.

O. A. Blanchard, of St. Paul, Minn., for defendant in support of said motion.

Victor E. Anderson, U. S. Atty., and John W. Graff, Asst. U. S. Atty., both of St. Paul, Minn., for United States of America in opposition thereto.

On November 2, 1943, defendant was indicted by the Grand Jury upon six counts for alleged violations of the Mann Act, 36 Stat. 825, 18 U.S.C.A. § 397 et seq. The case was tried before this Court and a jury during the March, 1944, term of court. A verdict of guilty was returned on all counts. At the trial the Government called one Esther Jensen Williams as a witness. When she testified in answer to the Government's first question that she and defendant had been married in January, 1944, defendant objected to her being further questioned, contending that she was an incompetent witness because of the marriage. The marriage took place after the offenses involved herein. After argument in the jury's absence, the Court overruled the objection, and Esther Jensen Williams proceeded to testify concerning six trips which she made from Minneapolis, Minnesota, to Mason City, Iowa, in 1943 for the purposes of practicing prostitution at Mason City, and of defendant's connection therewith.

Although other witnesses were called, and although their testimony, to some extent, at least, corroborated that of the allegedly transported woman, there seems little doubt that without the testimony of the wife the Government would not have been able to prove its case. Defendant's

counsel now moves for a new trial upon the ground that the Court committed error in permitting Esther Jensen Williams to testify. Defendant contends that she was an incompetent witness according to the common law by which this Court is bound. There is no contention that the question of privilege between husband and wife with respect to confidential communications is involved. And, so far as the record shows, the wife did not object to testifying.

■ There is no doubt that at the old common law a wife generally could not testify against her husband. Stein v. Bowman, 1839, 38 U.S. 209, 13 Pet. 209, 10 L. Ed. 129; Bassett v. United States, 1890, 137 U.S. 496, 11 S.Ct. 165, 34 L.Ed. 762. Such a rule was and still is sustained upon the ground that the contrary rule would disturb the marital happiness of the couple. 8 Wigmore on Evidence, 3d Ed., Sec. 2227 et seq. But an exception to this rule was made and the wife was permitted to testify against her husband when she suffered personal injury through his actions. That exception was based upon the necessity of the situation, for the absence of such an exception would leave the wife without protection against personal injury from her husband. Lord Audley's Case, 1631, 3 How.St.Tr. 401, 402, 414; 8 Wigmore on Evidence, 3d Ed., Sec. 2239.

These were the rules already existing in 1789,[1] and which the Circuit Court of Appeals for the Eighth Circuit considered binding in Johnson v. United States, 1916, 221 F. 250. In that case the court did hold that a wife whose husband transports her across interstate lines for immoral purposes could not testify against him. But the case was predicated upon the ground that at common law a woman could not testify against her husband unless she had suffered personal violence at his hands. That rule, the court held, could only be changed by statute. There is no doubt that when the Johnson case was decided the court was assumed to be bound by the common law as it was then interpreted,[2] although its application to the factual situation in the Johnson case may be open to doubt in view of the subsequent discussion.

■ But, in any event, the United States Supreme Court now has held in Funk v. United States, 1933, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136, that henceforth Federal courts are not bound by the common-law rules which governed a wife's competency and privilege to testify in 1789 or any other year. It held that the Federal courts can expand or contract these common-law rules as modern experience and necessity demand in the interest of justice. Legislation was held not to be necessary to change the common-law rules. United States v. Wood, 1936, 299 U.S. 123, 144, 57 S.Ct. 177, 81 L.Ed. 78; see, also, McNabb v. United States, 1942, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. Thus it would seem that, with one stroke, reinforced by subsequent decisions, the Supreme Court destroyed the very foundations of the Johnson decision.

The Eighth Circuit Court of Appeals also has recognized this conclusion since the Johnson case was decided. In a strong dictum in Tinsley v. United States, 1930, 43 F.2d 890, that court declared that the ancient rules of the common law were no longer binding upon the court and clearly indicated that Judge Stone's dissent in Adams v. United States, 8 Cir., 1919, 259 F. 214, 215, was the sounder view.[3] Consequently, both the United States Supreme Court and the Appellate Court for this Circuit authorize this Court to depart from the old common-law rules applied in the Johnson case if good reason and public policy exist therefor. So the question is not, as defendant's counsel seems to assume and the Johnson case holds, What was the common law in the beginning? But, on the contrary, the question is, What should the common law be now in light of reason and experience? As stated by the Supreme Court in the Funk case page 381 of 290 U.S., page 215 of 54 S.Ct., 78 L.Ed. 369, 93 A.L.R. 1136: "The fundamental basis upon which all rules of evidence must rest—if they are to rest upon reason—is their adaptation to the successful development of the truth. And, since experience is of all teachers the most dependable, and since experience also is a continuous process, it follows that a rule of

---

[1] For significance of the year 1789, see Funk v. United States, 1933, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136, and cases therein cited.

[2] For the history of this doctrine, see Funk v. United States, supra.

[3] In the Adams case, Judge Stone points out that the common-law rule as to a wife's testifying is not necessarily sound and should be changed according to modern concepts.

evidence at one time thought necessary to the ascertainment of truth should yield to the experience of a succeeding generation whenever that experience has clearly demonstrated the fallacy or unwisdom of the old rule."

The old common-law general rule that a wife cannot testify against her husband without his consent has been attacked often and forcefully. See Wigmore on Evidence, 3d Ed., Sec. 2228. But whatever soundness and justification these attacks may possess (and there seems little doubt but that they do possess some soundness), neither they nor the general rule need be dealt with in this case except indirectly. The soundness of the general rule and the justification for its existence (the preservation of marital happiness) may be, for the purposes of this discussion, assumed. We are concerned, however, only with the question of whether a woman who has been transported or caused to be transported in interstate commerce for immoral purposes by one who is now her husband can testify against the husband when he is prosecuted criminally for that crime. Certainly, experience, sound reasoning, and good public policy, based upon modern understanding, require the question to be determined adversely to the defendant's contention.

█ We are dealing here with a problem which does not appear to have confronted the common-law courts, in that transportation of women in commerce for immoral purposes is a modern statutory crime which does not seem to have existed at common law. That is, although prostitution may have been rampant in common-law days, interstate transportation of women for such purposes obviously was then no crime. Moreover, the old common-law cases which are cited as involving exceptions to the general rule that a wife cannot testify against her husband do not appear to consider crimes which corrupted the wife's morality. See Denning v. United States, 5 Cir., 1918, 247 F. 463. Crimes like seduction before marriage, assault and battery, and rape, all involve personal violence to the wife. Although crimes like adultery and fraud on the part of the husband may not involve personal violence and may be a moral wrong to the wife, certainly they involve no injury to her morals. The Mann Act violations of the character now under consideration do involve injury

to the wife's morals. Consequently, cases coming down to us from the old common law of 1789, and still followed by some courts today, really pertain only to crimes of personal violence by the husband against his wife and not to crimes like the instant one which result in moral violence to the wife. So it seems fallacious to suggest that a wife cannot testify against her husband— even if he has injured her morals—merely because the common law provided for a wife's testifying against her husband only when he had used violence upon her person. The common law seems never to have had occasion to consider the question of exceptions to the general rule further than the personal injury situation.

No one can doubt that the common-law exception invoked when the husband uses personal violence against his wife is sound. Moreover, it is securely rooted in the foundations of modern justice, and no reason to unearth it has been suggested. As some courts which have considered the question of moral injury have pointed out, the acts like those which this defendant has committed are the same, in practical thinking, as an act of personal violence against the wife. See Denning v. United States, supra; Cohen v. United States, 9 Cir., 1914, 214 F. 23, certiorari denied 235 U.S. 696, 35 S.Ct. 199, 59 L.Ed. 430; United States v. Rispoli, D.C. Pa.1911, 189 F. 271; see, also, Pappas v. United States, 9 Cir., 1917, 241 F. 665; United States v. Bozeman, D.C.Wash.1916, 236 F. 432. It is undoubtedly an offense against the wife, and it operates directly and immediately upon her. And the inevitable and foreseeable physical violence following the transportation cannot be divorced from the transportation, at least in so far as the injuries to the wife are concerned.

In fact, Lord Audley's Case, supra, upon which the exception regarding personal violence is founded, involved a situation in which the husband does not seem to have committed the act of violence against his wife. He instigated the rape of his wife. See Denning v. United States, supra. In "white slave" cases the husband, in practical effect, likewise instigates another to commit a personal act upon his wife by transporting her or causing her to be transported to a house of prostitution for purposes of prostitution. Consequently, the "white slave" cases seem really to be within the very spirit, if not the letter, of

the case which is the basis for the so-called personal injury exception which permits a wife to testify against her husband.

■ The fact that in the Mann Act cases the wife may consent to the transportation at the time is of no significance. Section 3, 18 U.S.C.A. § 399, of the Mann Act itself provides that the consent of the woman to the transportation is irrelevant to the existence of the crime. The defendant is indicted under this section. For a court to declare that such consent could not only prevent the transported wife from testifying, but also prevent the husband's conviction for the crime (and the court would be saying this where the transported wife was the only witness), obviously would be thwarting both the spirit and the purpose of this section. The procedural and substantive law policies must agree if the public welfare is to be protected according to the intent of Congress. Moreover, consent by the wife to the commission of the crime should create no necessary inference of marital happiness at the time of trial. The contrary is often true.

That the "white slave" activities by the husband with reference to his wife injure her morals cannot be doubted, and such fact itself seems to justify an extension of the exceptions to the general rule that a wife cannot testify against her husband. Some cases seem to have extended it for this reason. See United States v. Mitchell, 2 Cir., 1942, 137 F.2d 1006, pages 1008, 1009, where the court stated:

"* * * The exception itself is well settled; the only question at all doubtful is whether it can be properly applied to a violation of the White Slave Traffic Act. Here the argument is made that this is not a crime against the person of the wife, but a crime against interstate commerce. But, as Wigmore, id. § 2239, says generally of all cases of enticing to prostitution or white slave traffic involving the wife, 'of course morally it is a shameless offense against wifehood'; and we agree, as do all the authorities, with a single exception, which deal with the specific question under this statute. Denning v. United States, 5 Cir., 247 F. 463; Pappas v. United States, 9 Cir., 241 F. 665; Cohen v. United States, 9 Cir., 214 F. 23, certiorari denied 235 U.S. 696, 35 S.Ct. 199, 59 L.Ed. 430; United States v. Rispoli, D.C. E.D. Pa., 189 F. 271; United States v. Bozeman, D.C. W.D. Wash., 236 F. 432. In the only case which has ruled otherwise, Johnson v. United States, 8 Cir., 221 F. 250, the court, as Wigmore, id., points out, failed to consider the exception at all. In Yoder v. United States, 10 Cir., 80 F.2d 665, the defendant's divorced wife was allowed to testify in denial of the defendant's testimony, but Judge McDermott rested the court's decision on the broader ground of the wife's competency. See also Cohen v. United States, 5 Cir., 120 F.2d 139. In Kerr v. United States, 9 Cir., 11 F.2d 227, certiorari denied 271 U.S. 689, 46 S.Ct. 639, 70 L.Ed 1153, on a prosecution for violation of the mails, a wife was allowed to testify that her husband had mailed her poisoned candy.

"To say of this statute at bar that all it does is to preserve the purity of our federal compact is to shut our eyes to the realities of modern federal crime, where the federal ground, whatever it may be, is the constitutional excuse and justification, rather the reason for being, of the legislation. Cf. Chamberlain, Federal Criminal Statutes, 1934, 20 A.B.A.J. 501; Federal Co-operation in Criminal Law Enforcement, 48 Harv. L. Rev. 489; 1 Law & Contemp. Prob. 399-508. Whatever else this statute may do, it strikes at the exploitation of women, and comes directly within the reason of the exception. After all, the situation of the injured wife deserves some consideration; and in circumstances such as are here presented, we think it would be shocking to deny her the right to testify. With Denning v. United States, supra, 247 F. at page 466, we believe that 'a woman is as much entitled to protection against complete degradation as against a simple assault.'"

The Mitchell case is a strong decision upon the question and clearly represents a modern approach to the problem.

Necessity also demands that the wife be permitted to testify against her husband when he has injured her morally. At common law the courts recognized that if a man could commit personal violence against his wife at will, she would have no protection against his violent acts. Likewise, in the "white slave" situations, if a husband can corrupt his wife's morals without fear of her testifying against him in a prosecution therefor, she would have little or no means of protecting her morals against him. Certainly, the domestic happiness of the couple will be impaired no more if the wife testifies as to the moral injuries which the husband inflicts upon

her than it would be when she testifies as to the physical injuries he inflicted upon her. The need to be practical and realistic and to recognize the necessity that a wife should, over her husband's objection, be permitted to testify against him as to moral wrongs he has committed against her seems apparent. It seems reasonably sound, therefore, to adopt the rule previously adopted by all Federal courts which have considered the question in recent times, and that is that a wife can testify against her husband when he commits an act against her harmful to her morals. Denning v. United States, 5 Cir., 247 F. 463; Pappas v. United States, 9 Cir., 241 F. 665; Cohen v. United States, 9 Cir., 214 F. 23; United States v. Rispoli, D.C., 189 F. 271; United States v. Bozeman, D.C., 236 F. 432; United States v. Mitchell, 2 Cir., 137 F.2d 1006. As the court pointed out in the Denning case, supra, at page 466 of 247 F.: "* * * They should not be permitted to invoke a sacred institution, and the rules established for its protection, to secure immunity from punishment for the most infamous crime that could be devised for its degradation."

▪ Apparently recognizing that this exception to the general rule is sound, defendant attempts to distinguish the instant case because the transportation here in question, and therefore any injuries Esther Jensen Williams suffered at defendant's hands, occurred prior to marriage. The common-law exception, he argues, protected the wife only against personal wrongs committed during their marriage. Such was undoubtedly the common-law rule of the States with respect to personal violence to the wife and still is their rule. Note, 76 A.L.R. 1006. And in United States v. Gwynne, 1914, 209 F. 993, the United States District Court of Pennsylvania adapted that rule to white slave cases in the only Federal decision which appears to exist as to that particular situation. But, like the Johnson case, the Gwynne case is based upon the old common law with the observation that only the Congress, not the courts, can change the common-law rule. Modern experience and conceptions of justice which the court must recognize do not seem to permit the old common-law rule to be followed with reference to a wife's right to testify against her husband as to the moral injuries which he inflicted upon her by transporting her for immoral purposes prior to their marriage. Perhaps be-

cause of this fact the most recent case upon the question of a wife's right to testify as to transportations for immoral purposes during coverture referred to the Gwynne case as making a "curious" distinction. See United States v. Mitchell, supra, page 1008 of 137 F.2d, note 3. The Gwynne case apparently recognized that a wife could testify against her husband as to injuries to her morals during coverture, but not to such injuries occurring before coverture. The Court would arrive at a very anomalous position if defendant's distinction were adopted. If the defendant were married to the woman at the time of the transportation and trial, she could testify against him, and if the defendant and the woman were not married when she was transported, or at the time of trial, she could testify against him. But, according to defendant, the Court would be bound to deny the woman the right to testify against the defendant if a combination of these circumstances existed; that is, if the transportation occurred prior to marriage. In other words, the Court, by its rules of evidence, would protect the husband from punishment for a crime against which Congress intended to protect the woman. The Mann Act then would give the woman no protection against a procurer's acts prior to their marriage.

Moreover, the question of whether a wife can testify as to her transportation by her husband prior to marriage is markedly different from the question of whether a wife can testify as to personal violence which her husband committed against her prior to marriage. In the latter situation, some sort of forgiveness of the wrong to her may be assumed by the marriage, and if the injured person desires to forget the matter and desires to live in a happy marital state with the one who injured her, a certain aversion to requiring or permitting her to testify against her husband whom she has forgiven, is readily understandable. In denying a wife the right to testify against her husband when he was being prosecuted for a crime of personal violence which he committed against her prior to marriage, the Minnesota Supreme Court said in State v. Feste, 205 Minn. 73, 76, 285 N.W. 85, 87: "We are here concerned, however with an offense which occurred prior to the marriage. In such a case the proper inference appears to be that any grievance existing between the parties was settled before the ceremony. Under these circum-

stances the considerations which support the general rule are applicable."

But, on the contrary, in Mann Act cases no forgiveness of the wrong to the woman seems inferable from the mere fact of marriage, for in this case and in the usual Mann Act cases, the woman consented to the transportation. She was a party to the act of transportation. It was not a situation in which the man was the only actor in the wrong. Consequently, as far as the woman was concerned, there was nothing to forgive by the marriage. No forgiveness resulting in a happy marital relationship seems inferable in white slave cases merely by marriage of the procurer and the woman. Even if marriage after transportation did constitute consent and forgiveness of previous transportation, it must be remembered that a woman has frequently been permitted to testify to her being transported by her husband during their marriage even though she consented to the transportations. See United States v. Mitchell, supra; Denning v. United States, supra; Pappas v. United States, supra; Cohen v. United States, supra; United States v. Rispoli, supra.

The instant case may also be distinguished from the problem of personal violence prior to marriage upon another basis. When personal violence is used upon a woman, she is the only one injured. Society may be injured very little, if at all. When the woman's body has healed from the personal violence inflicted upon it, the wrong has disappeared. But in transportation for immoral purposes the woman is not the only one injured. Those who come in contact with the woman at the house of prostitution where she would not be but for the transportation obviously are injured morally (and often physically) as a result of the transportation. And the morals of a transported prostitute who marries the procurer often cannot be rehabilitated by society as easily as the physical injuries of a girl who marries her assailant can be healed. Even when the transported woman is rehabilitated, the problem is not solved, as it is substantially when the physically injured woman's injuries are healed. The many young men whose moral and physical condition has been degraded by the woman's activities at the places to which she has been transported must still be dealt with by society. Society is seriously affected both morally and physically by these trans-

portations, and the marriage of the parties and the rehabilitation of the prostitue does not alleviate the difficulties. Public justice, which often is termed a partial basis for permitting the wife to testify against her husband as to personal injuries received during coverture, State v. Feste, supra seems to require a rule different from that applied when a wife seeks to testify against her husband as to personal injuries she suffered from him prior to marriage. Unlike personal violence cases, society and its members are also injured by the transportation. If, as stated in United States v. Mitchell, United States Supreme Court, 64 S.Ct. 896, "practically the whole body of the law of evidence governing criminal trials in the federal courts has been judge-made," it would seem that, under the circumstances herein, this Court should apply a rule of evidence in light of the public policy of this generation, and not blindly adhere to a rule of evidence which does not seem sound in light of reason and experience, nor in the interest of justice, when applied to the facts herein. As stated in the recent pronouncement of the Supreme Court in the Mitchell case, " * * * rules of evidence for criminal trials in the federal courts are made a part of living law and not treated as a mere collection of wooden rules in a game." Finally, it must be remembered that Congress passed the Mann Act to protect "weak women from bad men." Denning v. United States, supra. Certainly, the purpose of Congress would be thwarted if the woman's lips were sealed against a vicious and degraded man just because he may have induced the "weak woman" to marry him, probably in contemplation of evading justice by reason of the very rule which is now sought to be invoked.

It seems sound, therefore, to conclude that, under the common law interpreted in light of modern experience, reason, and in the furtherance of justice, a woman may testify against her husband when he has transported her in interstate commerce for the purposes of prostitution in violation of the Mann Act, and this rule of evidence should apply whether the transportation occurred during or prior to coverture.

The motion for new trial, therefore, will be denied. An exception is allowed to the defendant.