# TERRITORY OF HAWAII *v.* WILLIAM LAFAYETTE ALFORD.

## NO. 2868.

ARGUED MAY 22, 28, 1952.                DECIDED JULY 2, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

The defendant was indicted March 1, 1951, on five counts for procuring and pimping, contrary to the provisions of section 11676, Revised Laws of Hawaii 1945, as amended by Act 26 of the Session Laws of Hawaii 1949, the alleged offenses being committed on various dates as therein set out between the 1st day of December, 1949, and the 15th day of July, 1950. Defendant was arraigned in the circuit court of the first judicial circuit on April 13, 1951, where he entered a plea of not guilty; trial was had, jury waived; on April 25, 1951, defendant was found guilty and he was sentenced on May 25, 1951.

The evidence shows that the wife of defendant first met him in March, 1946, and lived with him from July, 1946, prior to her marriage to him in December, 1948; that she was working as a waitress and he was unemployed while living with her; that in August, 1946, the defendant persuaded her to go into the practice of prostitution; that he called her names, threatened her, and told her he had ways of handling a woman like her; that if she didn't do what he said he would "bust my face"; from then on she continued to practice prostitution, turning her earnings over to him. After her marriage to him in December, 1948, she

did not cease the practice of prostitution but continued to practice it upon his insistence and he continued to take her earnings. Detailed evidence was given as to various trips to the outside islands and the remitting of her earnings to defendant.

There is ample evidence (consisting mainly of the testimony of the wife of defendant, to which testimony objections were made) to show that defendant was guilty of the offense of pimping and procuring.

Before discussing the objections to the testimony of the wife of defendant, we shall briefly comment on the question raised for the first time on appeal as to the constitutionality of Act 26, Session Laws of Hawaii 1949, which it is alleged is contrary to section 45 of the Organic Act. As the question was not raised in the court below, and at the first opportunity, it cannot be raised for the first time in this court. (*Territory* v. *Kelley,* 38 Haw. 433; *Territory* v. *Tsutsui,* 39 Haw. 287.)

Objections to the testimony of defendant's wife may be summarized as follows: (1) that the offense of procuring and compelling a wife to practice prostitution was not an offense against the person of the wife and therefore she was not competent to testify against defendant at a trial for such offense; (2) that evidence relating to other offenses, in particular those committed prior to the statute of limitations, was inadmissible and, if admissible, that the witness, who was the wife of defendant, was not competent to testify thereto for reasons set forth under (1) above; and, (3) if procuring the wife to practice prostitution were an offense against the wife and if she were competent to testify relative thereto, yet as to offenses committed prior to coverture the wife was not competent to testify under section 9838, Revised Laws of Hawaii 1945.

That evidence of facts showing motive, intent, plan and scheme on the part of defendant (even though it tends to

show former offenses of the defendant) may be given is too well settled to need extended discussion. "It is not error to admit evidence of facts showing motive, or which are part of the transaction, or exhibit a train of circumstantial evidence of guilt, although such facts showed former offenses of the defendants." (*Ter. of Haw.* v. *Watanabe Masagi,* 16 Haw. 196.) See also: *Ter.* v. *Chong Pang Yet,* 27 Haw. 693; *Ter.* v. *Awana,* 28 Haw. 546; *Ter.* v. *Oneha,* 29 Haw. 150; *Territory* v. *Abellana,* 38 Haw. 532; Wharton's *Criminal Evidence,* 11th ed., vol. 1, § 352, p. 527; Underhill's *Criminal Evidence,* 4th ed., § 187, p. 346: "Unrelated crimes which were barred by the statute of limitations may be introduced to show general plan * * *."

"While ordinarily evidence is not admissible of a crime distinct from that for which the defendant is being tried, the fact of such crime, and defendant's connection with it, may be proved whenever it tends to show guilty knowledge, design, plan, motive or intent, if these matters are in issue in the case on trial. * * * the evidence referred to would have been admissible if the first four counts had never been drawn. Upon this point it is well said by the Superior Court (88 Pa. Superior Ct. 216, 223): 'This evidence, documentary and oral, was admissible under the well-settled rule that evidence of similar and unconnected offenses may be offered to show guilty knowledge, design, plan, motive and intent when such is in issue, and this is true although the other offenses are beyond the statutory period: [Citing authorities.] Here the evidence tended to show that the offenses charged were part of a system * * *'." (*Commonwealth* v. *Bell,* 288 Pa. 29, 135 Atl. 645.)

It was therefore not error to admit evidence showing that beyond the statute of limitations the defendant forced the complaining witness for the prosecution by threats and intimidation into the practice of prostitution and exacted from her the proceeds of such practice. Obviously, this

showed his scheme and design and, with her other testimony, also showed that it was a continuing offense up to the dates alleged in the indictment.

As to whether the wife herself may give evidence of such offenses committed prior to coverture will be discussed hereinafter with the discussion as to what extent the wife is a competent witness against her husband for compelling or persuading her to engage in prostitution.

It is contended that where a husband is charged with the offense of compelling and procuring his wife to practice prostitution with the intent to obtain and secure from her a portion of the gains earned in such practice of prostitution, the "offense" is not one "against the person of his wife" and therefore under section 9838, Revised Laws of Hawaii 1945, she is not competent to testify against her husband when he is on trial for such offense.

At common law one spouse cannot testify for or against the other in a criminal prosecution except that one may testify against the other as to an offense of violence committed by the latter "against the person" of the former, this exception being based upon the necessity of the situation, for the absence of such an exception would leave the one without protection from the other. (*Lord Audley's Case,* decided in 1631, 3 How. St. Tr. 401, 414.)

This exception has been codified in statute in some States and the States have removed the disqualification of a defendant testifying in his own behalf in criminal cases; they have also either by statute or judicial decision permitted the wife or the husband to testify in a criminal proceeding in behalf of the other.

It would appear that Hawaii has followed this procedure, as Laws of 1876, chapter XXXII, section 53, contained the following provision: "Section 53. Nothing herein contained * * * shall in any criminal proceeding render any husband competent or compellable to give evi-

dence against his wife, or any wife competent or compellable to give evidence against her husband, except in such cases where such evidence may now be given; provided also that in all criminal proceedings the husband or wife of the party accused shall be a competent witness for the defence." The Session Laws of 1927 inserted after the clause "except in such cases where such evidence may now be given" the following: "and in such cases in which the accused is charged with the commission of an offense against the person of his wife or of her husband, as the case may be."

Is compelling or persuading of a wife by the husband to become a prostitute an "offense against the person of his wife"? Counsel for defendant strongly urges that our statute is a codification of the common law and must be strictly construed; that the offense "against the person of his wife" must be a crime of violence involving bodily injury to the person; that such was the common law authorities and weight of the authority in the States under various statutes.

Assuming that the Hawaiian statute is a codification of the common law, let us therefore examine what the common-law rule was and is as interpreted by enlightened modern authorities in regard to testimony of a wife against her husband for an "offense against" her "person."

As the question of the qualifications of the spouses as witnesses against each other in criminal prosecutions is controlled by legislative enactment in most of the States, the modern growth and development of the common-law rule regarding the testimony of one spouse against the other is primarily to be found in the decisions of the federal courts. In this connection it has often been said that the common law is not immutable but flexible and by its own principles adapts itself to varying conditions. The court in *Funk* v. *United States*, 290 U. S. 371, in deciding that a wife was a competent witness in behalf of her husband in

a criminal case, even though there be no statutory modification of the common-law rule, said in substance that courts in the face of changing conditions are not chained to ancient formulae but may enforce conditions deemed to have been wrought in the common law itself by force of changing conditions; that the public policy of one generation may not under changed conditions be the public policy of another; that the dead hand of a common-law rule of evidence of 1789 should no longer be applied where contrary to modern experience and thought and to the general current of the legislative and judicial opinion; that the court at all times in the application of any rule of evidence should give heed to present-day standards of wisdom and justice.

Our own court in *Dole* v. *Gear,* 14 Haw. 554, in refusing to follow an old English rule and the decisions of Massachusetts, where the English rule was regarded as the correct one and whose statute Hawaii adopted, recognized that the common law consists of principles and not of set rules; on page 561 of the decision it quotes with approval from *Morgan* v. *King,* 30 Barb. 9: "* * * 'when it is said that we have in this country adopted the common law of England, it is not meant that we have adopted any mere formal rules, or any written code, or the mere verbiage in which the common law is expressed. It is aptly termed the *unwritten law* of England; and we have adopted it as a constantly improving *science,* rather than as an *art;* as a system of *legal logic,* rather than as a *code* of *rules.* In short, in adopting the common law, we have adopted its fundamental principles and modes of reasoning, and the substance of its rules as illustrated by the reasons on which they are based, rather than by the mere words in which they are expressed.' "

In *United States* v. *Williams,* 55 F. Supp. 375, at page 380, the statement was made that: " '* * * rules of evidence for criminal trials in the federal courts are made a

part of living law and not treated as a mere collection of wooden rules in a game.' "

Following this emancipating interpretation of the common law, as set forth in *Funk* v. *United States, supra,* the federal courts have uniformly ruled that under the common law as interpreted in the light of modern experience, reason, and in the furtherance of justice, the exception to the general rule making a wife incompetent to testify against her husband in criminal cases, save when she has suffered a personal injury through his action, permits the wife to testify against her husband in a prosecution for a crime instituted by the husband which corrupts the wife's morality.

In *United States* v. *Rispoli,* 189 Fed. 271 (1911), permitting the wife to testify against her husband in a Mann Act case, it was stated: "* * * the offense in question was essentially within the spirit of the long-established rule that allows her to testify in protection or in vindication of her right to be secure in her person against threat or assault, even by her husband."

The federal decisions relating to Mann Act cases are filled with similar statements. For example, in *United States* v. *Mitchell,* 137 F. (2d) 1006, it was said: "After all, the situation of the injured wife deserves some consideration; and in circumstances such as are here presented, [violation of the Mann Act] we think it would be shocking to deny her the right to testify. With Denning v. United States, supra, 247 F. at page 466, we believe that 'a woman is as much entitled to protection against complete degradation as against a simple assault.' "

*Shores* v. *United States,* 174 F. (2d) 838, decided in 1949, stated in the syllabus: "Defendant's transportation of wife in interstate commerce contrary to the Mann Act was a *personal wrong against the wife* whose testimony was properly admitted in evidence * * *." (Emphasis added.)

*Cohen* v. *United States,* 214 Fed. 23, in another white slave case, held that the bringing of the wife from one State to another in violation of the White Slave Act was "such a *personal injury* to her as to entitle her to testify against him." (Emphasis added.)

In accord are the following cases: *Pappas* v. *United States,* 241 Fed. 665; *Denning* v. *United States,* 247 Fed. 463; *United States* v. *Mitchell* 137 F. (2d) 1006 (*aff'd on rehearing,* 138 F. [2d] 831; *cert. denied,* 321 U. S. 794; *rehearing denied,* 322 U. S. 768); *Levine* v. *United States,* 163 F. (2d) 992; *Hayes* v. *United States,* 168 F. (2d) 996; *Shores* v. *United States,* 174 F. (2d) 838; *United States* v. *Bozeman,* 236 Fed. 432; *United States* v. *Williams,* 55 F. Supp. 375.

The *Williams* case, *supra,* contains a very excellent discussion of the authorities and the reasons behind those decisions. It held in portions of the syllabus as follows: "Under the common law as interpreted in light of modern experience, reason, and in furtherance of justice, exception to rule generally making a wife incompetent to testify against husband without his consent save when she has suffered personal injuries through his actions has been expanded to permit wife to testify against husband in prosecution for crime which corrupts wife's morality." This case points out that the old common-law rule that a wife generally could not testify against her husband was and is sustained upon the ground that the contrary rule would disturb the marital happiness of the couple, but an exception to this rule was made and the wife was permitted to testify against her husband when she suffered personal injury. This exception was based upon the necessity of the situation. It discusses the 1916 case of *Johnson* v. *United States,* 221 Fed. 250, which held that the wife could not testify against her husband in a Mann Act case; that the rule existing in 1789, which at common law prevented

a wife from testifying against her husband unless she had suffered personal violence at his hand, could be changed only by statute; it then points out and discusses the *Funk* v. *United States* case, *supra,* which overrules the *Johnson* case, and held that the federal courts are not bound by the common-law rules which governed the wife's competency and privilege to testify in 1789 or any other year. It discusses several of the cases relied on by defendant where the wife cannot testify in crimes such as bigamy, adultery and fraud on the part of the husband, pointing out that though such cases may be a moral wrong to the wife, certainly they involve no injury to her morals; that Mann Act violations do involve injuries to the wife's morals. It continues: "Consequently, cases coming down to us from the old common law rule of 1789, and still followed by some courts today, really pertain only to crimes of personal violence by the husband against his wife and not to crimes like the instant one which result in moral violence to the wife. So it seems fallacious to suggest that a wife cannot testify against her husband — even if he has injured her morals — merely because the common law provided for a wife's testifying against her husband only when he had used violence upon her person. The common law seems never to have had occasion to consider the question of exceptions to the general rule further than the personal injury situation.

"No one can doubt that the common-law exception invoked when the husband uses personal violence against his wife is sound. Moreover, it is securely rooted in the foundations of modern justice, and no reason to unearth it has been suggested. As some courts which have considered the question of moral injury have pointed out, the acts like those which this defendant has committed are the same, in practical thinking, as an act of personal violence against the wife. [Citing authorities.] It is undoubtedly *an*

*offense against the wife,* and it operates directly and immediately upon her." (Emphasis added.)

We agree with this statement that such act is "undoubtedly an offense against the wife, and it operates directly and immediately upon her." It is no strained construction to hold that putting one's wife into prostitution is "an offense against the person of his wife."

Finally, as to the contention that the wife was not a competent witness to testify that in August, 1946, and prior to the marriage, the defendant forced her to go into the practice of prostitution by threats, etc., is thoroughly discussed in *United States* v. *Williams, supra,* as well as in the case of *United States* v. *Shores, supra.* Pointing out that to permit the wife to testify against her husband as to injuries to her morals during coverture but not as to such injuries occurring before coverture, the court would arrive at a very anomalous position; if defendant were married to the woman at the time of the offense she could testify against him, and if defendant and the woman were not married at the time of the offense and at the time of the trial she could testify against him, but if the woman were not married to him at the time of the offense but was at the time of the trial she could not testify against him. The cases holding to this anomalous rule go on the theory that some sort of forgiveness of the wrong may be assumed by the marriage; if the injured person desires to forget the matter and to live in a happy marital state with the one who injured her, there is an aversion to requiring or permitting her to testify against her husband whom she has forgiven. This is readily understandable. The court further points out that when personal violence is used upon a woman she is the only one injured; society may be injured very rarely if at all, but such is not the case with injuries against the wife involving moral degradation.

The Mann Act, as has frequently been stated, was to

protect "weak women from bad men" and that the purpose of the Congress would be thwarted if the woman's lips were sealed against a vicious and degraded man just because he may have induced the "weak woman" to marry him. "It seems sound, therefore, to conclude that, under the common law interpreted in light of modern experience, reason, and in the furtherance of justice, a woman may testify against her husband when he has transported her in interstate commerce for the purposes of prostitution in violation of the Mann Act, and this rule of evidence should apply whether the transportation occurred during or prior to coverture." (*United States* v. *Williams,* 55 F. Supp. 375, at page 380.)

Obviously, the purpose of our statute relating to procuring and pimping is, as is the Mann Act, to protect "weak women from bad men." The same reasoning applies to it as applies to the Mann Act and the purpose would better be served by permitting the woman to testify as to the acts forcing her into the practice of prostitution prior to marriage, particularly as the husband forced her continuance in such practice, and the subsequent marriage was apparently for the very purpose of attempting to obtain protection for the vicious man.

In conclusion therefore we hold that the famous exception for Necessity in case of injury to the spouse, as set forth in *Lord Audley's Case,* is equally applicable in securing the wife in her person and in protecting her against complete degradation as against a simple assault; that as stated by some of the decisions allowing a wife to testify against her husband who forced her into prostitution, it is within the spirit of the long-established rule of necessity to protect her against assault by her husband. ("* * * the letter killeth, but the spirit giveth life.") Further, permitting testimony of a wife under such circumstances comes not only within the exception of Necessity set forth in *Lord Audley's Case* but actually comes within the wording of the

territorial statute as "an offense against the person of his wife." It is difficult to conceive a more heinous offense against her person by a husband.

Though the decisions holding that the wife is competent to testify as to such offenses committed prior to coverture are more logical and reasonable than the ones to the contrary, it is not necessary to pass directly on this point as the evidence adduced showing offenses prior to coverture was not to charge the defendant with offenses at that time, which in fact would have been barred by the statute of limitations, but was evidence of the defendant's plan for putting this woman into prostitution and that it also showed other crimes was merely incidental.

Judgment affirmed.

*Harriet Bouslog* (*Bouslog & Symonds* on the briefs) for plaintiff in error.

*T. Kitaoka* and *J. H. Kamo,* Assistant Public Prosecutors (*James H. Kamo,* Assistant Public Prosecutor on the brief), for defendant in error.