The JADe GROUP, INC., an Illinois Corporation, Plaintiff,

v.

OVERHEAD DOOR CORPORATION, an Indiana Corporation, et al., Defendants.

OVERHEAD DOOR CORPORATION, an Indiana Corporation, Counter Complainant,

v.

John A. DeCICCO et al., Counterclaim Defendants.

No. 74 C 2727.

United States District Court, N. D. Illinois, Eastern Division.

May 22, 1979.

---

Robert P. Cummins, Cummins, Decker & Webb, Michael J. Howlett, Jr., Chicago, Ill., for plaintiff.

Samuel A. Haubold, Jack A. Rovner, Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

JOEL M. FLAUM, District Judge:

This matter comes before the court upon the Motion of Overhead Door Corporation (Overhead) to Dismiss plaintiff's Complaint, and the Motion of John A. DeCicco (DeCicco) to Reconsider the Award of Attorneys Fees made by the court on December 15, 1978. For the reasons set forth below, Overhead's Motion is granted, and this court's Order of December 15, 1978 (Order) is modified.

The factual background of these motions is as straightforward as it is unique. On September 20, 1974, The JADe Group, Inc. (JADe) filed the instant Complaint charging Overhead and others with violations of the Federal antitrust laws. JADe was dissolved on April 16, 1975, and its assets were liquidated to its sole shareholder, DeCicco.

On December 5, 1978, this case went to trial. The trial session of December 15, 1978, began with a colloquy between counsel and the court, conducted in open court, out of the presence of the jury. This event consisted solely of JADe's lawyer, Francis Goodman (Goodman) informing the court that he would not be calling a particular witness and that he would be asking the court to reconsider an earlier ruling on an evidentiary motion.

At the conclusion of this brief dialogue, the jury was brought into the courtroom, and a witness was placed upon the stand. After two introductory questions were posed by Overhead's counsel and answered, DeCicco, who had been present during the above-mentioned colloquy, arose, approached the podium, and said:

> Your Honor, excuse me. I have just dismissed my counsel. I don't feel I can go on, your Honor.

The jury was then excused from the courtroom.

Further discussions then took place between the court, counsel, and DeCicco. Ultimately, Overhead moved for dismissal of JADe's Complaint and/or an award of attorney's fees and costs. DeCicco requested the declaration of a mistrial. After some reflection, this court decided that the proper course of action was to declare a mistrial, grant Overhead costs and attorney's fees incurred in the immediate preparation for trial and in the trial itself, and take its Motion to Dismiss under advisement.[1] This decision was formalized in the Order.

DeCicco, having obtained new counsel, now moves that the court reconsider that portion of the Order granting Overhead costs and attorney's fees. Overhead's Motion to Dismiss has also been fully briefed by the parties.

■ Both parties agree that this court has the power to grant or deny the latter Motion, and that the question calls for the exercise by the court of its equitable discretion. The court agrees. Based upon the record as it now stands, the court concludes that the Motion to Dismiss should be granted.

DeCicco has explained his action as prompted by his feeling that, owing to the allegedly poor quality of the representation he was receiving from Attorney Goodman, his case was not adequately being presented to the jury. While he had viewed three week's worth of a related trial in a Federal district court in Minneapolis; attended certain depositions and pretrial conferences in this case; participated extensively in his counsel's preparation for trial; and attended and consulted with Goodman during the entire trial proceedings in the case *sub judice*, the court does not lightly disregard DeCicco's statement that he did not intend to abort his trial. On the other hand, the court doubts that it would be reasonable to suppose that, if it exists, bad faith could ordinarily be more convincingly proven. *Cf. United States v. Mitchell*, 137 F.2d 1006, 1010 (2d Cir. 1943).[2] Therefore, while the court does not make a specific finding of bad faith, it concludes that the absence of such a finding on the part of DeCicco should not be weighed heavily in his favor.

A second factor exists in this case that might militate against the dismissal of the Complaint. While not emphasized in DeCicco's written brief, the fact remains that this lawsuit involves claimed violations of the Federal antitrust laws. The public has an interest in the enforcement of those laws via private suits like this one, and this court does not now rule that this litigation was frivolous or that Overhead was entitled to a directed verdict on the basis of the evidence that JADe had introduced at trial prior to the court's declaration of a mistrial. However, no one has suggested that the trial of this lawsuit is *essential* to the vindication of that public interest.[3]

DeCicco further urges that this court should, in ruling upon Overhead's Motion, consider certain allegedly improper conduct on the part of counsel for Overhead. While the court is by no means satisfied that any such improper conduct occurred, inasmuch as that conduct is not in any way claimed to

---

1. This court viewed the declaration of a mistrial as a necessity, because it feared that either party might justly have felt that it could not obtain an impartial decision from the jury after the incident in question occurred.

2. In addition to the information mentioned in the text, which testifies to the fact that DeCicco was not totally unfamiliar with courtroom procedure, the court notes the following additional facts. First, DeCicco admits that he was dissatisfied with the performance of his counsel to the extent of discussing his feelings with Goodman the night before the incident took place. Second, no event occurred after the jury was brought into the courtroom on the morning of December 15, 1978, that might have reasonably provoked DeCicco's outburst. (The court wishes to emphasize that there is absolutely no evidence in the record that would suggest that Goodman in any way counselled DeCicco to take the action that he took on December 15.)

3. DeCicco has repeatedly brought to this court's attention the now-dismissed Minnesota case entitled *Nordpal v. Overhead Door Corp.*, which he has deemed to involve substantially the same business practices challenged by him in the case *sub judice*. The fact of its existence suggests to the court that others may be able to champion the public interest in the premises.

be directly related to, or responsible for, DeCicco's action on December 15, 1978, the court deems DeCicco's allegations to be irrelevant to the court's disposition of the instant Motion. In any event, such behavior would in no way excuse DeCicco's actions.

DeCicco's dramatic announcement of December 15, 1978, has prejudiced Overhead in several significant respects. Clearly, the events of December 15 have escalated the costs that Overhead has incurred in defending this action, delayed a final decision and denied the parties a verdict by a jury jointly selected. Furthermore, JADe has now heard Overhead's opening statement, learned its trial strategy, and seen its examination of JADe's witnesses. It is true that this court might be able to reduce somewhat any unfair advantage that JADe might have accrued by means of this "discovery" of possible weakness in its case by directing that, upon retrial, JADe's case-in-chief be restricted to the introduction of the trial record plus the two witnesses who were scheduled to testify after DeCicco disrupted the trial. But this procedure would deprive the new jurors of their ability to judge the credibility of the witnesses who testified at the aborted trial. Certain of these obstacles might be overcome were the case to be heard upon retrial by the court without a jury, but a jury trial was demanded by both sides, the jury had heard many days of testimony, and neither side has indicated a desire to wave its right to a trial by jury. U.S.Const. amend. VII; Fed. R.Civ.P. 39(a).

Still more significant, however, is the fact that the integrity of the legal system has been challenged by DeCicco's action. He chose to be represented in these proceedings by Attorney Goodman. For over four years he affirmed that choice. He watched—indeed, actively participated in the conduct of—this trial for over eight trial days. When he decided that the proceedings were

not to his liking, he rose up to request a second bite at the apple, with a new lawyer.[4] Whether or not he acted in good faith, this was the admitted purpose of DeCicco's request.

If DeCicco acted in good faith—that is, if he did not purposely seek to abort this trial and cause a mistrial—, he evidently did not choose to discuss this with his attorney or with the court outside the hearing of the jury before blurting out his wishes in the manner that he did.[5] It is important to observe that, even if DeCicco did not become aware of his desire to replace Goodman with substitute counsel until the morning of December 15, 1978, these courses of action would still have been open to him. However, owing to his alleged "ignorance of the fine points of the law," he chose to act in the way that he did.

While this court finds that it taxes credulity to believe that, had he thought before acting, DeCicco would not have realized the likely consequence of his action, the court concludes that no party with the demonstrated courtroom experience and intellect of DeCicco should be able to abort a trial in this manner and avoid the dismissal of his case on account of any "ignorance of the law." If a non-lawyer litigant of the background and case involvement of DeCicco wishes to participate in the conduct of his civil cases before this court, he must make himself aware of such elementary legal propositions as the one involved here, or he must exercise a modicum of self-restraint and, in accord with the dictates of common sense, make the appropriate inquiries before acting.

The consequences that would flow from this court adopting an opposite position are manifested by the record in this case. Nine days of this court's trial time, not to mention the time that consideration of post-trial matters has taken, have effectively been wasted. DeCicco has succeeded in depriving Overhead of its chance to have the case

4. Insofar as DeCicco wanted to "retry" his own case, albeit before the same jury, his avowed purpose was itself of the most questionable legitimacy.

5. The court notes, with regret, that had DeCicco pursued any of these options, this incident would surely not have occurred.

decided by the jury that both parties chose. If this Motion were to be denied, DeCicco would also have succeeded in obtaining a second trial of his case, which is precisely what he wished to achieve.

This kind of behavior, in this factual setting, cannot be tolerated. It has no redeeming virtues. It could easily have been avoided—indeed, it would have been avoided had common sense been heeded. It poses a most serious threat to the integrity of the American scheme of trial by jury in civil cases. The fact that the Complaint alleges actions in contravention of the public interest does not justify or offset the ill-effects inherent in DeCicco's conduct. Therefore, the court concludes that it has no choice but to dismiss JADe's Complaint, with prejudice.

As the court has settled upon this resolution of the Motion to Dismiss, it deems it proper to treat Overhead as the prevailing party in *The JADe Group v. Overhead Door Corp.* Consistent with this disposition of Overhead's Motion, the court reaffirms its previous decision to award Overhead costs. Indeed, the court now holds that Overhead is entitled to an award of costs with regard to the aborted lawsuit, generally. However, in light of the fact that the court does not consider the Complaint to have been filed or the case brought to trial from malice, in bad faith, or for other impermissible reasons, the court deems it appropriate to vacate the Order insofar as it awards Overhead attorney's fees.

Accordingly, *The JADe Group v. Overhead Door Corp.* is hereby dismissed, with prejudice. Overhead is awarded costs in that action, and this court's Order dated December 15, 1978, is vacated insofar as it grants Overhead an award of attorney's fees. *Overhead Door Corp. v. John A. DeCicco* will remain on the trial calendar.

It is so ordered.